FERNE KILPATRICK *et al.*, Plaintiffs-Appellants, v. FIRST CHURCH OF THE NAZARENE, Defendant-Appellee (James Walker, Appellant).

Fourth District   No. 4—88—0072

Opinion filed March 23, 1989.—Modified on denial of rehearing June 2, 1989.

James Walker, Ltd., of Bloomington, for appellants.

Heyl, Royster, Voelker & Allen, of Peoria (Robert V. Dewey and Karen L. Kendall, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

On January 11, 1985, in the circuit court of Woodford County, plaintiffs Ferne and Raymond Kilpatrick filed a personal injury complaint against defendant First Church of the Nazarene. On February 24, 1987, after six days of trial and upon completion of the evidentiary phase of the proceeding, the court granted defendant's motion for a mistrial based on the conduct of plaintiffs' counsel, James Walker. On December 16, 1987, the court entered judgment for defendant and against plaintiffs in the amount of $228 for costs incurred with the deposition and trial testimony of defense counsel: $76 for deposing defendant's counsel and $152 relating to the offer of proof. Judgment was also entered against Walker and for defendant in the amount of $7,120.90 for attorney fees and costs incurred in the mistrial. Plaintiffs and Walker appeal the imposition of the judgments.

We first address the propriety of entering judgment against attorney Walker for defendant's fees and costs. This award was based upon the trial court's finding that Walker presented "improper and/or prejudicial information to the jury and otherwise into the record." As a result of Walker's conduct, the trial court granted a mistrial.

Plaintiffs' counsel is not fresh into the trenches of the practice of law and has, on several occasions, proved his considerable ability before this court. Nevertheless, in the instant case, Walker's conduct *indicated* a conscious attempt to damage the trial proceedings. His conduct in the jury trial of referring to repairs made after the accident was a violation of court order. He made these comments prior to defense counsel's remarks concerning repairs and, thus, it was not defense counsel who initially "opened the door" to post-accident repairs. Even after the trial court subsequently barred further reference to repairs, Walker continued to make blatant references to the repairs. In addition, Walker called as a witness an adjustor for defendant's insurer and, despite the trial court's admonitions, asked questions and received answers which would lead an average juror to believe the witness was representing an insurance company. Additionally, contemptuous conduct toward the trial judge occurred partially in front of the jury and was further justification for a mistrial.

At the close of all the evidence, defendant moved for a mistrial, alleging Walker's repeated intentional violations of the court orders irreparably prejudiced defendant in the eyes of the jury. Plaintiffs also moved for a mistrial on other grounds. The court granted defendant's motion. The trial court did not make a finding that Walker *intentionally* caused the mistrial.

It is clear that in the absence of statutory authority, or an

agreement between the parties, a successful party to a lawsuit is not entitled to attorney fees or costs of litigation. (*Ritter v. Ritter* (1943), 381 Ill. 549, 553, 46 N.E.2d 41, 43; see also *Meyer v. Marshall* (1976), 62 Ill. 2d 435, 442, 343 N.E.2d 479, 483.) Walker refers us to *In re Marriage of Spizzo* (1988), 168 Ill. App. 3d 487, 492, 522 N.E.2d 808, 811, which states:

> "It has also been held that causing a mistrial does not give rise to liability for attorney fees, absent an agreement between the parties or statutory authority."

Two cases are cited as support. (*Central Illinois Public Service Co. v. Westervelt* (1976), 35 Ill. App. 3d 777, 782, 342 N.E.2d 463, 468, *aff'd* (1977), 67 Ill. 2d 207, 367 N.E.2d 661, *cert. denied* (1978), 434 U.S. 1070, 55 L. Ed. 2d 772, 98 S. Ct. 1252; *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 166-67, 390 N.E.2d 859, 865.) However, the facts in those cases do not include findings of intentionally causing a mistrial. *Westervelt* involved a mistrial, but there was no indication of deliberate impropriety on the part of the attorneys involved. *Kerns* involved an award of attorney fees for an indemnity counterclaim. The award was struck down by the supreme court.

*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 453 N.E.2d 820, *appeal denied* (1983), 96 Ill. 2d 560, *cert. denied* (1984), 466 U.S. 951, 80 L. Ed. 2d 539, 104 S. Ct. 2153, is contrary to most opinions and involved a legal malpractice case. In *Harvey*, the court held deliberate and premeditated conduct resulting in a mistrial was sufficient justification for an award of attorney fees. In so holding, the court stated:

> "[W]hen one's wrongful conduct forces another into litigation with third parties, he is liable for all of the costs of that litigation including attorney fees. [Citation.]
>
> *** We find that the award of attorney fees and costs merely compensated defendants for ordinary losses resulting from plaintiff's conduct. (*Sorenson* [*v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47].)" (*Harvey*, 117 Ill. App. 3d at 454, 453 N.E.2d at 825.)

It should be noted the attorney fees awarded in *Sorenson* were to compensate for additional fees incurred as a result of the delinquent attorney's failure to timely file certain estate matters. They did not relate to the attorney fees incurred in the malpractice proceedings.

Attorney Walker's conduct cries out for a just response. However, before sustaining the trial court's award of $7,120.90, a careful weighing of policy is involved. Courts should not constrain trial tactics with the fear that a mistake or vigorous advocacy, which results in a mis-

trial, could result in severe financial penalty. Conceivably, there are cases where it would be difficult to judge between mistaken tactics and deliberate and premeditated conduct. It, thus, can be argued that courts should never allow sanctions assessing attorney fees and trial costs when a mistrial takes place.

On the other hand, the trial courts must have power to control trial proceedings. We note the $7,120.90 award and the award in *Harvey* were not made under the contempt powers of the trial court. No argument has been made that Walker could not have been punished by fine or jail under the contempt powers. In fact, Walker was held in contempt because of one incident during the trial and was fined $450. It can be argued that these contempt powers are not sufficient to protect the judicial process, and should not be the exclusive remedy for attorney misconduct.

The reasons for refusing to award attorney fees to successful litigants are set forth in *Ritter*. In relevant part, the court in *Ritter* stated:

"The policy of the rule is obvious. If the wrongful conduct of a defendant causing the plaintiff to sue him would give rise to an independent tort and a separate cause of action, there would be no end to the litigation, for immediately upon the entry of judgment the plaintiff would start another action against the defendant for his attorney fees and expenses incurred in obtaining the preceding judgment. *** Under our jurisprudence the defendant may present any defense to such an action that he may have or that he may deem expedient, and in so doing he will not be subjecting himself to a second suit by the plaintiff based on the wrongful conduct of the defendant in causing the plaintiff to sue him or in defending the action. The rule is the same even though the wrongful conduct of the defendant is willful, intentional, malicious or fraudulent." (*Ritter*, 381 Ill. at 555, 46 N.E.2d at 44.)

We note these policies do not apply equally to wrongful actions which are deliberate and premeditated, intended to cause a mistrial, and which disrupt the judicial process to the point where the trial court must declare a mistrial.

▮▮ ▮ Considering the various factors involved, including the fact of ever-increasing litigation costs, the rule expressed in *Harvey* arguably has merit. However, the *Ritter* opinion clearly states awards of attorney fees and costs must rely upon statutory provisions. (See *Daily v. Leigh* (1954), 2 Ill. 2d 499, 502, 119 N.E.2d 204, 206.) The power to prescribe rules governing attorney conduct and to discipline attorneys

for violating those rules rests solely with the Illinois Supreme Court. (*People ex rel. Brazen v. Finley* (1988), 119 Ill. 2d 485, 494, 519 N.E.2d 898, 902.) We conclude that *Harvey* should not be followed by this court, and the judgment for $7,120.90 against Walker must be vacated.

Plaintiffs next contest the imposition of the sanction for $76 for deposing defendant's counsel, Kendall. They believe it is improper because the taking of the deposition was proper.

Defendant originally received an order pursuant to Supreme Court Rule 215 (107 Ill. 2d R. 215) to have the victim examined by a physician. This examination was set up on two separate days. After the first day, defendant notified plaintiffs that the other examination was cancelled. This apparently piqued the curiosity of plaintiffs' counsel, who deposed the physician to ascertain the reasons for the cancellation. When he could give no reason, the deposition of counsel Kendall was demanded.

Defendant filed a motion to quash the deposition subpoena and a motion for sanctions, upon which the court reserved ruling. The deposition took place on October 16, with Kendall being represented by counsel. The sole purpose of the deposition was to determine the reason for the cancellation. Kendall explained that at the time the order for an examination was entered, she was unaware that the doctor selected for the examination was in partnership with the doctor who had previously seen the victim. When this was discovered, the second visit was cancelled. The court determined that the discovery sought in the deposition was not proper because it did not involve "matter relevant to the subject matter involved in the pending action," and imposed the sanction.

Discovery is controlled by Rule 201, which states:

"[A] party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action ***." (107 Ill. 2d R. 201(b)(1).)

This full disclosure is limited by section (b)(2) of Rule 201, which provides in part:

"Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." (107 Ill. 2d R. 201(b)(2).)

This is the work product exemption to discovery. The purpose of this exemption is to prevent complete invasion of files of counsel, and it is clear it would protect notes and memoranda actually prepared by counsel for use in trial. (*Stimpert v. Abdnour* (1962), 24 Ill. 2d 26, 31,

179 N.E.2d 602, 605.) However, as properly understood, this exemption does not protect material and relevant evidentiary facts from the process of discovery. *Stimpert*, 24 Ill. 2d at 31, 179 N.E.2d at 605.

In explaining the range and application of the exemption, our supreme court stated:

> "In determining the scope of the exemption contemplated by this clause of the rule, attention must be focused upon the words 'made in preparation for trial'. Although it may feasibly be said that *all* memoranda, reports or documents made by or for a party prior to the actual trial are 'made in preparation for trial', present-day concepts of discovery as envisaged by *Stimpert, Krupp*, and kindred cases, looking to the ultimate ascertainment of the truth and in many instances the realization of just settlements without the necessity of protracted litigation cannot countenance such a broad interpretation of Rule 19—5(I). [Citation.] We believe that only those memoranda, reports or documents which reflect the employment of the attorney's legal expertise, those 'which reveal the shaping process by which the attorney has arranged the available evidence for use in trial as dictated by his training and experience,' [citation] may properly be said to be 'made in preparation for trial' as contemplated by that language employed in Rule 19—5(I). Thus, memoranda made by counsel of his impression of a prospective witness, as distinguished from verbatim statements of such witness, trial briefs, documents revealing a particular marshalling of the evidentiary facts for presentment at the trial, and similar documents which reveal the attorney's 'mental processes' in shaping his theory of his client's cause, are documents 'made in preparation for trial' and exempt from discovery under Rule 19—5(I). Other material, not disclosing such conceptual data but containing relevant and material evidentiary details must, under our discovery rules, remain subject to the truth-seeking processes thereof." *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 359-60, 221 N.E.2d 410, 416.

■ While the present case deals with a deposition rather than the discovery of documents, it is clear, since this exemption applies equally to depositions (107 Ill. 2d R. 206(c)(1)), that this analysis is applicable. It is also obvious that the reasons why defendant cancelled the doctor's appointment are protected by this exemption. The decision to have an examination ordered is a decision made in preparation of trial by counsel based on his expertise and evaluation of the case. It is clear any reports from the examination would be discoverable,

but that counsel could not be deposed concerning his reasons for asking for the examination. Similarly, counsel's reasons for cancelling an examination are based on his expertise, and requiring counsel to disclose his reasons would reveal his mental processes which shape his conduct of the case. The reason for cancellation may be that counsel has discovered a weakness in the opponent's case that makes the examination unnecessary; it may be that counsel has discovered he can successfully impeach his opponent's medical testimony; or it may be that counsel has decided not to contest the injuries but rather focus on the alleged cause. In any case, the revelation of this would unfairly tip counsel's hand and allow his opponent to take steps to combat his proposed trial strategy. In the present case, it turns out the reason for the cancellation is more mundane. However, that makes it no less protected work product and no less exempt from discovery.

■ Having determined the impropriety of the taking of the deposition, we need to address the imposition of the sanction. Rule 219 provides that if a party wilfully obtains or attempts to obtain information to which he is not entitled, or otherwise abuses the discovery process, the court may impose sanctions. (107 Ill. 2d R. 219(d).) These sanctions may include an order that the offending party or his counsel pay the other party's attorney fees. (107 Ill. 2d R. 219(c).) Discovery is not a tactical game. (*Williams v. A.E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 566, 416 N.E.2d 252, 256.) It will not be effective unless trial courts unhesitatingly impose appropriate sanctions on those who use the process to impede or harass its opponents. (*Williams,* 83 Ill. 2d at 566, 416 N.E.2d at 256.) In the present case, the exemption from discovery of the sought after information is so readily apparent that we are led to the inescapable conclusion that plaintiffs wilfully chose to search out information to which they knew they were not entitled. The result was to harass their opponent and cause their opponent to incur increased expenses. The imposition of these increased attorney fees as a sanction is appropriate.

Plaintiffs attempt to characterize the case as involving the propriety of defendant's failure to fully comply with the Rule 215 order it received. However, this is not the question with which we are faced. The question we answer is whether the *reasons* for defense counsel's not proceeding with the examination she requested are properly discoverable by deposition. As discussed above, they are not.

Plaintiffs next assert the imposition of the sanction for $152 relating to an offer of proof was incorrect. At the close of plaintiffs' evidence, Walker indicated a desire to make an offer of proof which was allowed at the close of all the evidence. This offer of proof involved

the testimony of counsel Kendall. She filed a motion in opposition to this request and volunteered to stipulate to submission of her deposition. Plaintiffs' counsel told the court he had in mind the offer of proof he wished made, and it was not contained in the deposition. The court allowed the offer of proof to proceed but restricted it to areas not covered in the deposition. The offer took place and covered only those items contained in the deposition. Most questions were successfully objected to for that reason. It was during this time Walker was appropriately found in direct contempt.

Subsequently, defendant filed a motion for sanctions requesting plaintiffs be ordered to pay defendant's increased attorney fees for the costs of having counsel present when Kendall testified. In granting the request, the court's order provided:

> "I have reviewed the trial transcript and in particular that portion of the transcript relating to the plaintiffs' offer of proof by examination of opposing trial counsel ***. I am convinced that these efforts did not, and were unlikely to elicit any new facts relevant for admission into evidence in the cause. The same efforts were unlikely to preserve any legitimate Appellate review issue. It now seems clear that this was simply a tactic to exert pressure upon opposing trial counsel during the trial and therefore constitutes unjustified harassment even if the typical emotional heat of trial is considered."

Plaintiffs maintain this sanction is improper since it was imposed solely because they exercised their right to an offer of proof. They rely on the general rule that a party has a right to make an offer of proof. (*Fidelity & Casualty Co. v. Weise* (1898), 80 Ill. App. 499, 513.) However, as the above language indicates, the sanctions were not imposed for making an offer of proof. Rather, the sanctions were imposed for using the offer of proof to unjustly harass opposing counsel.

In *Harvey*, discussed earlier in this opinion, the court declared that a counsel, whose wilful conduct serves no purpose in the truth-finding process and causes the other party to experience increased costs, could be held responsible for those costs, including attorney fees, as a sanction. Our present case is just such a situation. There was no purpose for Kendall to testify other than as the trial court indicated. The topic had already been covered in the deposition, which the trial court had already ruled covered material not relevant to this proceeding. Defendant offered to stipulate to entry of this deposition in place of the testimony. Plaintiffs refused the offer and suggested other ground would be covered. The offer then covered the same ground.

In *Shelton v. American Motors Corp.* (8th Cir. 1986), 805 F.2d 1323, the court addressed the difficulties of having counsel testify. While that case involved a deposition, it is illustrative of the general problem:

> "The practice of forcing trial counsel to testify as a witness, however, has long been discouraged, see *Hickman v. Taylor*, 329 U.S. 495, 513, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947) *** and recognized as disrupting the adversarial nature of our judicial system [citation]. Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. *** Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the 'chilling effect' that such practice will have on the truthful communications from the client to the attorney is obvious.
>
> &ast; &ast; &ast;
>
> *** The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the cost of litigation, demeans the profession, a·l constitutes an abuse of the discovery process." (*Shelton*, 805 F.2d at 1327-30.)

These similar difficulties occur with the trial testimony of counsel. It is for these reasons the courts have recognized that the trial courts may refuse to allow counsel be called as a witness. *People v. Gendron* (1968), 41 Ill. 2d 351, 358, 243 N.E.2d 208, 213, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179.

■ It is apparent this offer of proof was not used in good faith, but rather as a weapon. The court imposed the sanction of the cost of having counsel appear and represent Kendall during her testimony against plaintiffs. If this sanction could be imposed, it should have been against Walker. However, for the reasons we vacated the $7,120.90 judgment (see *Ritter*, 381 Ill. 549, 46 N.E.2d 41; *Meyer*, 62 Ill. 2d 435, 343 N.E.2d 479; *Daily*, 2 Ill. 2d 499, 119 N.E.2d 204; *Brazen*, 119 Ill. 2d 485, 519 N.E.2d 898), we now vacate the $152 judgment.

This opinion does not condone Walker's trial tactics. While the existing statutes and supreme court rules do not allow assessment of attorney expenses, the contempt powers of the trial court should be

used to prevent conduct of the type evidenced in this cause.

We affirm the judgment against plaintiffs for $76, reverse and vacate the judgment against Walker for $7,120.90, and reverse and vacate the judgment against plaintiffs for $152.

Affirmed in part; reversed in part and vacated.

KNECHT and GREEN, JJ., concur.