**Guillermo CASTILLO, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al., Defendants.**

**In re the Matter of James G. WALKER, Attorney–Respondent.**

No. Misc. S–92–4.
No. 86–2326.

United States District Court,
C.D. Illinois.

Nov. 2, 1992.

Charles L. Palmer, Flynn, Palmer, Tague & Lietz, Champaign, IL, for plaintiff.

James Wilder and James Walker, Bloomington, IL, for defendants.

Before MIHM, Chief Judge, MILLS and McDADE, District Judges.

## OPINION AND ORDER

PER CURIAM.

A hearing was held before a three-judge panel of this Court on June 26, 1992, for a Show Cause Hearing against Attorney James G. Walker pursuant to Rule 1.3(A) of the Local Rules of the United States District Court for the Central District of Illinois. CDIL–LR 1.3(A). For the reasons stated in this Order, Mr. Walker is hereby suspended from the practice of law as a member of the bar of this Court for a minimum of one year.

## BACKGROUND

This disciplinary proceeding was initiated under Local Rule 1.3(A) by the Court in the person of then Chief Judge Harold Baker based on the conduct of Mr. Walker as counsel for the Plaintiff in *Castillo v. St. Paul Fire & Marine Insurance Co.*, Case No. 86 cv 2326, which was before Judge Baker.[1] Local Rule 1.3(A)[2] subjects a member of the bar of this Court to possible "suspension, disbarment, or other appropriate disciplinary action" if found guilty of "conduct unbecoming" a member of this bar. CDIL–LR 1.3(A). Pursuant to Local Rule 1.3(B), Attorney Charles L. Palmer was appointed to prosecute the Court's interests in this proceeding.[3] On December 5, 1991, Attorney Palmer filed a Complaint alleging violations of the Illinois Code of Professional Responsibility and conduct unbecoming a member of the bar of the Central District of Illinois by Attorney Walker. On January 13, 1992, Attorney Walker filed with the Court a motion for a hearing and to strike or for a more definite statement of subparagraphs 4(b), 4(c), and 4(e) of the Complaint pursuant to Federal Rules of Civil Procedure 12(e) and (f). Both motions were subsequently allowed. On February 6, 1992, an Amended Complaint was filed by Attorney Charles Palmer. Mr. Walker filed his response on June 26, 1992.

On June 26, 1992, a hearing was held before United States District Judges Michael M. Mihm, Richard Mills, and Joe Billy

1. By Order entered December 7, 1989, Judge Baker ordered Mr. Walker "to show cause why he should not be found in contempt, sanctioned, disbarred, or suspended from the Central District, and reported to the Attorney Registration and Disciplinary Commission." (12/07/89 Order at 1). By Order entered January 29, 1990, Judge Baker referred the matter to the remaining judges of the district for disciplinary proceedings after concluding that Mr. Walker's "conduct is so unprofessional, it is in such contradiction of the conduct one would expect of a member of the bar that this matter should be referred to the remaining judges of the district to consider what discipline, if any, in their judgment should be applied to Mr. Walker." (01/29/90 Order at 4).

2. Local Rules 1.3(A) and (B) were formerly Local Rules 2(A) and (B).

3. See Judge Baker's Order of December 7, 1989.

McDade. Appearing before the Court were Attorney Charles L. Palmer on behalf of the Court and Attorney James Wilder and Respondent James Walker on behalf of Mr. Walker. At the hearing, the parties mutually agreed that the proceedings would not be closed[4] and would be inclusive of evidence and argument regarding whether Respondent Walker had violated the local rules and the proper discipline to be imposed, if any.[5]

### MR. WALKER'S CONDUCT

This matter stems from an antitrust action between Plaintiff Dr. Guillermo Castillo and Defendants St. Paul Fire & Marine Insurance Company and Burnham City Hospital. In that action, Dr. Castillo refused to increase his medical malpractice coverage to the limits required by the hospital, and this failure to comply resulted in the suspension of his medical staff privileges at the hospital. Dr. Castillo, represented by Attorney Walker (and his associate, Dean Engelbrecht), responded by filing suit alleging violations of the Sherman and Clayton Acts, the Civil Rights Act of 1871, and the Illinois Antitrust Act.

Mr. Walker's conduct as attorney for Dr. Castillo is memorialized in the October 31, 1989, deposition of Dr. Castillo and is thoroughly described and discussed in the Opinion of the Court of Appeals in *Castillo and James Walker and Dean Engelbrecht v. St. Paul Fire & Marine Insurance Company,* 938 F.2d 776 (7th Cir.1991). In *Castillo,* the Seventh Circuit reviewed and approved the civil contempt, discovery, and statutory sanctions imposed by Judge Baker upon Mr. Walker for the conduct that resulted in the initiation of these disciplinary proceedings. The essential facts as summarized in that Opinion are as follows:

In June 1989 each of the defendants, after considerable scheduling difficulties, undertook to depose Dr. Castillo, but did not get very far with it even though it took all day and 281 pages of transcript. The doctor was at this session represented by attorney Dean Engelbrecht, an associate of Walker. The session began by counsel objecting, without prior notice to defendants, to producing certain documents previously requested on the basis that the documents were irrelevant, duplicative, or a violation of physician-patient privilege. The doctor's counsel also made it plain that the requested documents would not be provided because he argued the hospital had itself previously refused to provide the doctor with the same types of documents. Counsel also stated that this was the last and only time the doctor would be made available for a deposition. In spite of this rocky beginning and without the previously requested documents, defendants' counsel proceeded.

After that, from time to time similar objections to questions followed. Sometimes there was a claim the question called for the doctor to speculate or give a legal opinion. If it was deemed irrelevant the doctor was also instructed not to answer in spite of Rule 30(c) requiring that evidence objected to shall be taken subject to objections. A number of questions for one reason or another did not get answered. When counsel for defendants tried to pursue a question which the doctor or his lawyer had tried to fence away the doctor's counsel charged harassment. Counsel, among other things, protected the doctor from answering questions about claimed damages, the meaning of letters the doctor had signed, and other questions related to the allegations of the complaint. The objections were on the basis that the doctor was not a lawyer and the letters and complaint, although signed by the doctor, had been composed by his present counsel. The questions called for legal conclusions or violated the privilege, it was claimed. Then followed some discussion about whether the deposition would have to be on the doctor's counsel. The doctor, however, needed little protection by his counsel as he was very adept at evading the questions, giving unresponsive answers and stonewalling.

Judge Baker fully reviewed the deposition objections after defendants filed mo-

---

4. 06/26/92 Tr. at 3.

5. *Id.* at 4–6.

tions to compel discovery and to require answers from the doctor. He found no merit in the particular objections whether for relevance or privilege or otherwise. Even if some particular questions may have had some basis for an objection, that would not cure the overwhelming and continuing abuse of the discovery process by the plaintiff and his counsel throughout much of the deposition.

After reading the deposition, this court fully agrees with Judge Baker. It is plain, as Judge Baker said, that the doctor's counsel was engaged in a "deliberate frustration of defendants' discovery attempts." As a result of that conduct Judge Baker assessed fees and expenses of $6,317.66 divided equally between the doctor and his counsel. . . .

As some of the deposition questions therefore had not been answered, Judge Baker directed that they forthwith be answered without interference from the doctor's counsel. A further effort was made to depose the doctor. This time it was attorney James Walker who appeared with the doctor, but this lawyer substitution did not improve the situation. Attorney Engelbrecht was also present. As Judge Baker later found and as is evident to us from the deposition, the doctor's counsel willfully and contumaciously disobeyed the court's order by interfering with the questions posed by defendants' counsel, and by directing the doctor not to respond to certain questions already approved by the court. The only issue of any possible consequence was the challenge in the questions allegedly on the basis of attorney-client privilege which, if answered, might waive the privilege. Judge Baker found, however, that few if any of the objections on the basis of privilege had any merit. We fully agree with that assessment. These repetitious obstructive tactics clearly deserved sanctions.

One remarkable incident occurring at this second deposition deserves telling. The deposition this time was being taken in attorney Walker's offices in Bloomington, Illinois. At another impasse, counsel for the hospital suggested that the differences between counsel be resolved by an immediate telephone conference with Judge Baker, a procedure Judge Baker had recommended. Attorney Walker did not immediately respond to the suggestion and hospital counsel therefore indicated he would go ahead and place the call. Then attorney Walker did respond:

> MR. WALKER: I would caution you not to use any telephones in this office unless you are invited to do so, counsel.

> MR. STANKO: You're telling me I can't use your telephones?

> MR. WALKER: You can write your threatening letters to me. But, you step outside this room and touch the telephone, and I'll take care of that in the way one does who has possessory rights.

When these deposition problems later came before Judge Baker he was not sure whether attorney Walker had actually threatened and intended physical violence or not. Attorney Stanko, the hospital counsel, advised the court that he had felt no fear of physical violence. Be that as it may, that exchange remains an example of professional incivility, a situation of general concern in this circuit and elsewhere. (Footnote omitted.)

Judge Baker found that attorney Walker's arguments and statements were capricious and aimed at stymieing the defense efforts to find out through discovery what the doctor's case was about. The court's order which was intended to avoid a repeat of the prior deposition problem had been ignored. The proceedings had been unreasonably and vexatiously prolonged in violation of 28 U.S.C. § 1927. Attorney Walker was also subject to sanctions under Rule 16 and Rule 37(b). The doctor's case was thereupon dismissed with prejudice and attorney Walker was found to be in civil contempt. Dismissal of a doctor's case for conduct similar to this is not unknown to us. *Godlove v. Bamberger,* 903 F.2d 1145 (7th Cir.1990), *cert. denied,* 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 230 (1991). The contempt, it was provided, could be purged by paying the expenses and fees of the defense. In addition, Judge Baker, after a hearing on a rule to show cause,

concluded that attorney Walker's conduct was so unprofessional that it required referral to the other two judges in the district to determine the appropriate discipline, if any, including reprimand, censure, suspension, disbarment, or whatever might be found to be just. *Castillo*, 938 F.2d at 778–80.

## APPLICATION OF LAW

### I. *The Court Has Authority To Censure, Suspend, Or Disbar An Attorney Whose Unprofessional Behavior Casts Doubt Upon His Continued Fitness to Practice Law.*

■ This Court has inherent power and responsibility to supervise the conduct of attorneys who are admitted to practice before it. The reasons for this power were aptly stated in *In re Peter S. Sarelas, an Attorney,* 360 F.Supp. 794, 795–796 (N.D.Ill.1973), *aff'd,* 497 F.2d 926 (1974):

The power of a court to suspend an attorney from practice before that court is too well established to conceivably be doubted. The considerations involved when this action is taken were well summarized by Chief Justice Marshall one and one-half centuries ago:

"On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised...." *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 529–530, 6 L.Ed. 152 (1824).

The purposes for which the power to suspend is exercised have long been recognized to be of such paramount importance that any form of misconduct which might impair the trust and confidence of the public in the legal profession and in the integrity of the courts may be the occasion for disciplinary action. The Supreme Court long ago clearly and simply enunciated this principle:

"We do not doubt the power of the court to punish attorneys as officers of the same, for misbehavior in the practice of the profession. This power has been recognized and enforced ever since the organization of the courts, and the admission of attorneys to practice therein. If guilty of fraud against their clients, or of stirring up litigation by corrupt devices, or using the forms of law to further the ends of injustice; in fine, for the commission of any other act of official or personal dishonesty or oppression, they become subject to the summary jurisdiction of the court. Indeed, in every instance where an attorney is charged by affidavit with fraud or malpractice in his profession, contrary to the principles of justice and common honesty, the court, on motion, will order him to appear and answer, and deal with him according as the facts may appear in the case." *Ex parte Bradley*, 74 U.S. (7 Wall.) 364, 374, 19 L.Ed. 214 (1868). *Id.*

The local rules governing admission require all attorneys to take an oath or affirmation "... faithfully to discharge their duties as attorneys and counselors, and to demean themselves uprightly and according to law and the recognized standards of ethics of the profession...." CDIL–LR 1.2(B). Local Rule 1.3 provides for the suspension, disbarment or other discipline of a member of the bar who is guilty of conduct unbecoming a member of the bar of this Court, and for supplemental sanctions pursuant to Federal Rules of Civil Procedure 37 and 16 and the initiation of civil or criminal contempt proceedings when appropriate. CDIL–LR 1.3(A) and (C). In this case, civil contempt proceedings were initiated, and sanctions were imposed against Mr. Walker in the underlying lawsuit. Mr. Walker argues that these sanctions constituted sufficient punishment for his behavior. However, the fact that Mr. Walker was previously sanctioned does not dispose of the issue presently before the Court.

■ Unlike civil contempt and discovery sanctions, the purpose of this disciplinary proceeding is not to punish Mr. Walker for violating the discovery rules, but rather to determine whether the egregious and unprofessional nature of his conduct implicates his fitness to continue to function as an officer of this Court. *In re Echeles,* 430 F.2d 347 (7th Cir.1970). The Court of Appeals in *Echeles* stated:

> ... disbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice. *Ex parte Wall,* 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552 (1882). Thus the real question at issue in a disbarment proceeding is the public interest and an attorney's right to continue to practice a profession imbued with public trust. *In re Fisher,* 179 F.2d 361 (7th Cir.1950), *cert. denied sub nom. Kerner, et al. v. Fisher,* 340 U.S. 825, 71 S.Ct. 59, 95 L.Ed. 606 (1950). *Echeles,* 430 F.2d at 349–50.

■ Justifiable doubts implicating the public trust may be raised about the fitness of an attorney, supposedly devoted to upholding the law, who himself deliberately and unjustifiably disregards a clear and direct order of the Court with no discernable motivation other than to stymie and frustrate efforts to depose his client.

## II. *Mr. Walker's Conduct In The Castillo Case And At The June 26, 1992 Hearing Demonstrates That He Is Presently Unfit To Continue To Practice Before This Court.*

■ The Court must decide whether or not Mr. Walker's conduct indicates a lack of upright professional character necessary to demonstrate or to maintain his good standing as a member of the bar of this Court. As previously noted, the deposition transcripts are clear, and the facts are not in dispute. Mr. Walker and Attorney Palmer just ask that different inferences be drawn from those facts. However, the explanation for the facts proposed by Mr. Walker at the June 26, 1992, hearing was not credible. Mr. Walker's conduct at the deposition and his attempt to justify that behavior at the June 26, 1992, hearing demonstrate that Mr. Walker is not fit to continue to practice as a member of the bar of this Court.

As Judge Mills said very succinctly at one point during these proceedings, if Mr. Walker had come into the June 26, 1992, evidentiary hearing and told the Court that he had acted wrongly in conducting the deposition, that he knew that his conduct was wrong, that he apologized for the conduct and assured the Court that it would never happen again, then the hearing would have been speedily concluded. The reason why the hearing lasted so long and one of the reasons why the Court believes that Mr. Walker is presently unfit to practice law in this federal court is because of the attitude that he displayed at the hearing. Rather than admitting the error of his ways, Mr. Walker tried to justify his unacceptable conduct and attempted to do so with unsupportable arguments.[6] Further, Mr. Walker was equivocal as to how he would react should this type of situation arise again.[7]

At the hearing, Mr. Walker attempted to characterize his conduct as being of such a nature so as not to reflect on his fitness to continue as a member of the bar of this Court. According to Mr. Walker, his conduct at the deposition fell into three basic categories: (1) the instances where he advised his client not to answer because the question called for privileged information; (2) the instances where he advised his client not to answer because the question, in his opinion, called for information not relevant or otherwise improper; and (3) extraneous com-

---

6. *See infra* notes 10–15.

7. *See infra* note 10; Tr. at 25–30, 42–45.

ments or general discussion during the course of the deposition.[8] At the hearing, Mr. Walker testified that he only considered the latter category of his conduct to have been improper at the time.[9]

Mr. Walker argued that all of his conduct was consistent with the ordinary and routine deposition practice of lawyers practicing in this district at the time,[10] including opposing counsel in the underlying case.[11] However, Mr. Walker's conduct at the deposition is clearly distinguishable from his perception of general pretrial practice because he was under direct order from Judge Baker "not to interfere with defense counsels' inquiries" and "[i]f plaintiff's counsel wishes to object, he should state his objection and the deponent give his answer subject to the objection." (09/26/89 Tr. at 12). Mr. Walker's knowing, deliberate, and willful disobedience of Judge Baker's order is discovery abuse of a genre never before seen by this Court. Mr. Walker's conduct is also the most egregious example of lawyer incivility that this Court has ever seen. Further, even if Mr. Walker's assessment of the general level of deposition practice were accurate, which it is not, this would not excuse Mr. Walker's unprofessional conduct. The Court is very troubled by Mr. Walker's assumption that it is permissible to engage in unprofessional conduct as long as other attorneys are doing the same thing.[12] This view of professional ethics is wrong and, if continued, will inevitably reduce the level of law practice to the lowest common denominator.

Mr. Walker also tried to convince this Court that he was duty bound to act as he did, out of the fidelity to his client's rights required by professional ethics, regardless of Judge Baker's order.[13] On more than one occasion during the hearing, Mr. Walker tried to lead this Court to believe that the major reason for his conduct was his concern about protecting the attorney-client privi-

lege.[14] However, Judge Baker found, and the Seventh Circuit agreed, that "few, if any, of the questions raised a legitimate meritorious argument on the question of privilege." (Baker 01/29/90 Order at 2). When the Court pinned Mr. Walker down on this issue at the hearing, Mr. Walker finally conceded that there were only two questions asked in some 70 pages of transcript that had any bearing on the attorney-client privilege.[15] If Mr. Walker's objective had truly been to seek review of any of the allegedly privileged questions, surely he would have respectfully advised Judge Baker in the first instance that he disagreed with his order and intended to create a record for an interlocutory appeal.[16] Mr. Walker's privilege argument was nothing more than an attempt to mislead this Court as to the nature of his conduct and demonstrates his lack of fitness to practice before this Court.

The vast majority of the questions that Mr. Walker directed his client not to answer did not call for privileged information but were questions which Mr. Walker believed were "irrelevant" or "improper." With respect to these questions, Mr. Walker stated at the hearing:

I am here to say that the rules should have been followed by me initially, and, well, I wasn't the one that first violated it, but the rule should have been followed initially and I should have followed the rule and the order because the Seventh Circuit has now said we're enforcing this rule literally, and I intend to follow it literally. But as I said, there are often court orders that are not obeyed, and I just gave you one example, and there are many more, they are not obeyed, not out of a personal contempt to the court or to the authority, but because that is the time honored way of phrasing issues. (Tr. 35).

8. 06/26/92 Tr. at 23.

9. *Id.*

10. *Id.* at 23, 33–35.

11. *Id.* at 27.

12. *See supra* note 10–11.

13. 06/26/92 Tr. at 25, 29, 30, 54.

14. *Id.* at 24, 29, 39, 45–49.

15. 06/26/92 Tr. at 46.

16. *Id.* at 48 (Court's comments to Mr. Walker).

There was and is no legal basis for Mr. Walker to believe that he could instruct his client not to answer such questions at a deposition, and he did not need the Seventh Circuit to tell him so. Federal Rules of Civil Procedure 30(c) states that:

> ... All objections made at the time of the examination to the qualifications of the officer taking the deposition, or to the manner of taking it, or to the evidence presented, or to the conduct of any party, and any other objection to the proceedings, shall be noted by the officer upon the deposition. Evidence objected to shall be taken subject to the objections. Fed. R.Civ.P. 30(c).

Because there was no legal basis for instructing his client not to answer such questions, Mr. Walker could not have reasonably believed that the appellate court would allow him to seek interlocutory review of the disputed questions.[17]

If Mr. Walker had really felt professionally compelled to violate Judge Baker's order, the Court cannot think of a better way to do so than to inform Judge Baker in the telephone conference urged by opposing counsel. Mr. Walker now denies that Judge Baker had recommended that counsel initiate a telephone conference with the Court to resolve any dispute arising during the deposition.[18] Mr. Walker argues that there is no mention of the use of a telephone conference as a discovery dispute resolution mechanism in the Order of September 29, 1989, or the transcript of the hearing on September 26, 1989.[19] However, at the October 31, 1989 Deposition, neither Mr. Walker nor his associate, Mr. Engelbrecht, (who was at the September 26, 1989, hearing) challenged the fact that Judge Baker had made such a recommendation.[20] Further, at the hearing before Judge Baker on January 25, 1990, Judge Baker stated that:

> The other thing I regularly offer litigants, as I did in this case who have discovery disputes, to initiate a telephone conference with the court and on the record with a court reporter who will try to work them out so that expense will be saved to all the parties in the case and the case can move along and will obviate the necessity for hearings on motions to compel. (01/25/90 Tr. at 54–55).

Mr. Walker's present contention that Judge Baker never made such a recommendation appears to be yet another attempt to justify his behavior after the fact.

Finally, in conjunction with his refusal to allow opposing counsel to use his telephone to call Judge Baker, Mr. Walker made the following comments that could reasonably be interpreted as threatening violence to opposing counsel.

> MR. WALKER: I would caution you not to use any telephones in this office unless you are invited to do so, counsel.
>
> MR. STANKO: You're telling me I can't use your telephones?
>
> MR. WALKER: You can write your threatening letters to me. But, you step outside this room and touch the telephone, and I'll take care of that in the way one does who has possessory rights. (10/31/89 Dep. Tr. at 14).

Mr. Walker denies any intent to threaten violence,[21] and opposing counsel graciously denies having felt threatened. Regardless, some type of threat was clearly expressed and intended by Mr. Walker.

Equally troubling is Mr. Walker's response to Attorney Palmer's complaint regarding this highly uncivil conversation. Mr. Walker

---

**17.** *See supra* note 16.

**18.** 06/26/92 Tr. at 14, 15, 30, 38, 42.

**19.** Mr. Walker was not at the September 26, 1989, hearing and does not recall whether he had read the transcript of the hearing at the time of the October 31, 1989, deposition.

**20.** 10/31/89 Dep. at 10–14. On page 12, opposing counsel specifically challenged Mr. Walker's refusal *to set up* a telephone conference with Judge Baker as a violation of the Court's Order.

Mr. Walker merely replied that if opposing counsel had any further questions, he would hear them. It seems fair to say that if Mr. Walker truly believed there was no Court Order recommending a telephone conference, he would have said so at this point—or at any other point where opposing counsel asserted that the Court Order recommended such action.

**21.** 06/26/92 Tr. at 43–44.

stated in his written response filed January 15, 1992, that:

> Respondent recognizes that he should have responded differently. However, Respondent's conduct is certainly not grounds for suspension or disbarment. In Respondent's defense, he was totally unprepared for the situation. This event represented the first instance when someone threatened to use Respondent's telephone without consent. *Respondent hopes that such a situation does not arise again, but if it should, he will be completely civil in refusing the request.* (Emphasis added.)

When questioned by the Court with respect to this response, Mr. Walker was evasive and only after much questioning stated somewhat equivocally that he would not engage in similar conduct in the future.[22]

Disciplinary proceedings are taken very seriously by this Court. Mr. Walker's general attitude throughout the hearing was something less than forthright and sometimes bordered on outright deception regarding the reasons for his conduct at the deposition. The Court finds Mr. Walker's attempts to rationalize and justify his behavior as nothing more than an attempt to mislead this Court as to the motives behind his conduct. It is very clear from the record that Mr. Walker, from beginning to end, intended to impede and disrupt the taking of his client's deposition.[23] Based on his conduct at the hearing, the Court is not persuaded that he would not act the same way in the future with some new rationalization for his conduct.

Mr. Walker's conduct is yet another example of the deterioration in civility that is now endemic to the legal profession. We need look only to the *Interim Report of the Committee on Civility of the Seventh Federal Judicial Circuit* (April 1991):

> * 94% of judges found civility problems in lawyers' relations with each other (p. 8)

> * 79% of lawyers think civility problems arise most frequently in lawyers' relations among themselves (p. 9)

> * 94% of lawyers target discovery as the primary setting for uncivil conduct (p. 9).

The Interim Report states that:

> Scores of comments zero in on what may be generally called strategic non-compliance in discovery, including obstructing access to documents, burdensome requests for documents, refusals to make reasonable scheduling agreements, one upmanship, gamesmanship, sarcasm as a weapon, a failure to cooperate, and winning by trick or at any cost. (Interim Report at 17).

The underlying scenario orchestrated by Mr. Walker falls on all fours as a classic example and case history of the uncivil conduct deplored by the *Interim Report* on civility.

### III. *Mr. Walker Violated Local Rule 1.2 And The Illinois Code Of Professional Responsibility, And Discipline Is Necessary And Appropriate.*

The Court finds that Mr. Walker's conduct was contrary to and in violation of his oath as an attorney admitted to practice before this Court. During the taking of the deposition on October 31, 1989, Mr. Walker did not demean himself uprightly and according to law and the recognized standards of ethics of the profession as required by Rule 1.2(B)[24] of our Local Rules. Further, his conduct falls within the ambit of Rule 1.3(A) of the Local Rules which proscribes "conduct unbecoming a member of the bar of this Court."

The Court finds that Mr. Walker, by his conduct, violated the following provisions of the Illinois Code of Professional Responsibility:

(1) Rule 7–102(a)(1) of the Illinois Code of Professional Responsibility (now Rule 1.2(f)(1),[25] Illinois Rules of Professional Con-

---

**22.** *See supra* note 7.

**23.** Mr. Walker also tried to justify his conduct as resulting from the "heat of the battle" (Tr. 24), but it is clear from the deposition transcript that he went into the deposition with the intent to stymie the deposition, and his conduct had noth-

ing to do with opposing counsels' actions in the deposition.

**24.** Rule 1.2(B) was formerly Rule 1(B).

**25.** The existing Rules do not always exactly track the language of the Code in all respects; however, the pertinent regulation is the Code which

duct) by asserting a position and taking other action on behalf of a client when he knew or reasonably should have known that such action would serve merely to harass another;

(2) Rule 7–101(a)(1)(A) and Rule 7–109(a) of the Illinois Code of Professional Responsibility (now Rule 3.3(a)(11) and (13), Illinois Rules of Professional Conduct) by refusing "to accede to reasonable requests of opposing counsel that did not prejudice the rights of the client" and "suppressing evidence that [Walker] or his client had a legal obligation to reveal or produce";

(3) Rule 7–109(a) of the Illinois Code of Professional Responsibility (now Rule 3.4(a)(1), Illinois Rules of Professional Conduct) by unlawfully obstructing another party's access to evidence and counseling another person to do so;

(4) Rule 7–101(a)(C) and (D) of the Illinois Code of Professional Responsibility by engaging in "offensive tactics" and [failing to treat] "with courtesy and consideration other persons involved in the legal process"; and,

(5) Rule 1–102(a)(5) of the Illinois Code of Professional Responsibility (now Rule 8.4(a)(5), Illinois Rules of Professional Conduct) by "engaging in conduct that was prejudicial to the administration of justice."

Based on this conduct and the attitude displayed by Mr. Walker regarding this conduct, the Court must exercise its inherent powers to discipline Mr. Walker to assure that the trust and confidence of the public in the legal profession and the integrity of the courts is not violated.[26] We think suspension is appropriate in this case.[27] We are mindful that this case will set a standard within this district for those practicing lawyers who engage in unprofessional conduct when attending or taking depositions. However, the fact that this is a case of first impression in this district such that Mr. Walker may not have expected our condemnation of his conduct, carries little weight. One does not have to be forewarned that just and lawful orders of the Court are to be complied with on pain of some form of discipline.

This is not Mr. Walker's first censure for disobedience of court orders. In *Kilpatrick v. First Church of the Nazarene*, 182 Ill. App.3d 461, 130 Ill.Dec. 925, 538 N.E.2d 136 (4th Dist.1989), *appeal denied*, 127 Ill.2d 618, 136 Ill.Dec. 588, 545 N.E.2d 112 (1989), Mr. Walker represented plaintiff in a personal injury complaint. On February 24, 1987, after six days of trial and upon completion of the evidentiary phase of the proceedings, the trial court granted defendant's motion for a mistrial based on the conduct of plaintiff's counsel, James Walker. In addition, judgment was entered against Walker and his client in the amount of $7,120.90 for attorney's fees and costs incurred in the mistrial. In *Kilpatrick*, the appellate court observed that Walker's conduct "*indicated* a conscious attempt to damage the trial proceedings. His conduct in the jury trial of referring to repairs made after the accident was a violation of court order." (emphasis in original.) *Kilpatrick*, 130 Ill.Dec. at 926, 538 N.E.2d at 137. The court noted that "[e]ven after the trial court subsequently barred further reference to repairs, Walker continued to make blatant references to the repairs." *Id.* While overturning the award of attorney's fees against Respondent Walker, the *Kilpatrick* court concluded that:

This opinion does not condone Walker's trial tactics. While the existing statutes and Supreme Court rules do not allow assessment of attorney expenses, the contempt powers of the trial court should be used to prevent conduct of the type evidenced in this cause. *Kilpatrick*, 130 Ill. Dec. at 931, 538 N.E.2d at 142.

This Court also takes note of the judgment of contempt and resulting fines totalling $81,655.01 entered against Mr. Walker by the United States District Courts for the Southern and Eastern District of New York for his

---

was effective at the time of the deposition. Reference to the existing Rules serves merely to demonstrate the symmetry of ideas between the Code and the Rules.

**26.** *See Echeles*, 430 F.2d at 350; *Sarelas*, 360 F.Supp. at 795–96.

**27.** *In the Matter of Arthur P. Tranakos, Esq.*, 639 F.2d 492 (9th Cir.1981) (holding that suspension was appropriate where an attorney failed to promptly and diligently abide by Court Orders.)

**604**

violation of the courts'· orders issued in *In re Joint Eastern and Southern District Asbestos Litigation,* 129 B.R. 710 (E. & S.D.N.Y. 1991).[28] In that cause, the courts issued two separate orders staying all collection proceedings by asbestos litigants or their attorney against the Manville Corporation's asbestos litigation claim trust fund (the "Trust"). Despite a finding by the courts that Mr. Walker received notice of the contents of both orders (a fact Mr. Walker has neither contested nor challenged), he continued to pursue collection actions against the Trust in multiple state court actions resulting in the present contempt judgment. Because challenges interposed by Mr. Walker to the contempt judgment and associated sanctions have not yet been resolved in their entirety, the Court is restrained from commenting fully on Mr. Walker's actions. However, the Court does think it proper to note that Mr. Walker's uncontested disobedience of the New York court's orders, regardless of the reasons for such, indicates disrespect and disregard for the norms and traditions of the legal system.

At the June 26, 1992, hearing, Mr. Walker spent a great deal of time describing all of the contributions that his advocacy has made to the law. There is no doubt that Mr. Walker is a knowledgeable and experienced trial lawyer. However, Mr. Walker's legal accomplishment and expertise are basically irrelevant to the question before this Court: whether Mr. Walker is willing and able to comport himself in a manner which meets the minimal standards of professionalism and civility required of practitioners in the Federal District Court for the Central District of Illinois.

It is critical to the orderly processes of this Court that any attorney licensed to practice in this Court be committed to avoiding violation of a direct court order. The Court does not believe that Mr. Walker is so committed. Mr. Walker engaged in unprofessional conduct. He then (1) tried to mislead this Court as to the motivations behind his unprofessional conduct; (2) refused to unequivocally concede that his conduct was improper; and, (3) failed to satisfy the Court that he would comport himself in a civilized and professional manner in the future. Therefore, the Court concludes that Mr. Walker should be seriously disciplined by this Court for conduct which is considered to be totally unprofessional and unacceptable. The Court finds it both necessary and appropriate to suspend Mr. Walker from the practice of law before this Federal District Court for a minimum of one year. After a period of one year, Mr. Walker may file for reinstatement to the bar of this Court, at which time, he will bear the burden of demonstrating to the Court that he should be reinstated.

### CONCLUSION

All things considered, IT IS ORDERED that Mr. Walker be and he is hereby suspended from the practice of law as a member of the bar of this Court for a period of one year and until further order of this Court.

---

**28.** A discussion of Mr. Walker's conduct in this litigation can be found in a recent Order by Judge Mills regarding enforcement of the sanc-tions imposed on Mr. Walker. *Findley v. Blinken,* 800 F.Supp. 643 (C.D.Ill., 1992).