**In the MATTER OF Attorney Chris T. SEARER.**

**No. 5:96–MC–04.**

United States District Court, W.D. Michigan, Southern Division.

Dec. 19, 1996.

Chris T. Searer, Grand Haven, MI, pro se.

Michael Alan Schwartz, Fieger, Fieger & Schwartz, Southfield, MI, for plaintiff.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This matter concerns the professional misconduct of an attorney admitted to the bar of this Court. A show cause hearing was conducted on October 31, 1996, after which respondent was permitted to make supplemental written response. The supplemental response was received on November 20, 1996, and has been duly considered by the Court. This opinion embodies the Court's findings and conclusions.

### I

The conduct at issue occurred in connection with proceedings in a criminal prosecution, *United States v. Boyd D. Weekley*, W.D.Mich. No. 1:95–CR–157, assigned to this Judge. After a three-day jury trial, on June 6, 1996, defendant Weekley was found guilty of two counts of kidnapping, one count of interstate transportation of a minor with intent to engage in criminally prohibited sexual activity, and one count of interstate transportation of a stolen motor vehicle. On September 9, 1996, defendant Weekley was sentenced to life in prison without parole.

Respondent Attorney Chris T. Searer formally appeared and represented the family of the minor victims in the *Weekley* case. At issue is pretrial communication between Ms. Searer and defendant Weekley, without Weekley's attorney's express consent. This is a possible violation of Rule 4.2 of the Michigan Rules of Professional Conduct, binding upon counsel admitted to practice in this Court pursuant to W.D.Mich.L.R. 17.

The material facts are largely undisputed. On May 22, 1996, prior to commencement of the trial, Ms. Searer telephoned Boyd Weekley's attorney, Jeffrey O'Hara, and apparently suggested she might be able to persuade Weekley to plead guilty to some or all of the pending charges.[1] The conversation ended abruptly before Ms. Searer had either re-

---

1. This objective appears to have been important to Ms. Searer because Weekley's guilty plea would have obviated the need for her clients, the minor victims, to give trial testimony concerning their tragic experience.

quested or obtained O'Hara's permission to pursue such communication with Weekley. The next day, Ms. Searer received a telephone call from Weekley, who advised her that O'Hara had consented to his meeting with her. Accepting this representation as true, Ms. Searer met with Weekley for two hours on May 24, 1996 at the Newaygo County Jail, where he was lodged as a pretrial detainee.

Prior to the final pretrial conference in the *Weekley* case on May 29, 1996, the Court was advised by United States Marshal Barbara Lee that Ms. Searer had visited Weekley on May 24th and that he had thereafter been found in possession of contraband, cigarettes, which he claimed to have received from Ms. Searer. O'Hara had been similarly advised. At the time of the final pretrial conference, O'Hara advised the Court that he had not consented to Ms. Searer's contact with his client, and expressed concern about the integrity of his professional relationship with Weekley, as well as Weekley's right to a fair trial. Without disclosing the nature of her communications with Weekley, Ms. Searer defended her actions as zealous but legitimate advocacy on behalf of her clients. She did not deny that she had failed to obtain O'Hara's consent. The Court ordered Ms. Searer to "(1) refrain from divulging to anyone the contents, in whatever form, written or oral, of any communications she has had with Boyd D. Weekley without his counsel's express consent; and (2) refrain from communicating with Boyd D. Weekley in any fashion, written, oral, telephonic, through a third person or otherwise, without his counsel's express consent." Order dated May 31, 1996.

After Weekley's sentencing in September, the Court ordered Ms. Searer to show cause why she should not be disciplined in connection with her actions of May 24th. Ms. Searer has responded by (1) denying that she provided cigarettes to Weekley; and (2) contending that, although her reliance on Weekley's assurance of his attorney's consent to their meeting was a mistake, she did not violate any ethical rule.

## II

The Court has inherent power and responsibility to supervise the conduct of attorneys who are admitted to practice before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 300, 303 (9th Cir.1996); *Grace v. Center for Auto Safety*, 155 F.R.D. 591, 601 (E.D.Mich. 1994); *Castillo v. St. Paul Fire & Marine Ins. Co.*, 828 F.Supp. 594, 598 (C.D.Ill.1992).

The nature of a disciplinary proceeding is neither civil nor criminal, but an investigation into the conduct of the lawyer-respondent. *Standing Committee on Discipline v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984). The purpose of a disciplinary proceeding is not to punish, but rather to determine whether misconduct implicates fitness to continue to function as an officer of the Court. *Id.; Castillo, supra*, 828 F.Supp. at 599. The real question at issue is the public interest and an attorney's right to continue to practice a profession imbued with public trust. *Id.* The Court must thus consider both the fitness of one of its officers and the need to protect the public from an unqualified or unscrupulous practitioner. *Standing Committee, supra*, 735 F.2d at 1170. Because "deterioration in civility" is of epidemic proportions in the legal profession, the Court must be vigilant to safeguard public trust in the judicial system. See *Castillo*, 828 F.Supp. at 599, 602.

In the federal system there is no uniform procedure for disciplinary proceedings. The individual judicial districts are free to define the rules to be followed and the grounds for punishment. *Standing Committee*, 735 F.2d at 1170. At a minimum, however, an attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard. *Id.* The district courts have various sanctions they can impose for unethical behavior, including monetary sanctions, contempt, disqualification of counsel, suspension, and disbarment. See *Erickson, supra*, 87 F.3d at 303; *Standing Committee*, 735 F.2d at 1172–73; *Castillo*, 828 F.Supp. at 604.

## III

The ethical standards obligatory upon attorneys admitted to the bar of the Western

District of Michigan are defined at W.D.Mich.L.R. 17 as follows:

> The standards of professional conduct of members of the bar of this Court shall include the applicable Michigan Rules of Professional Conduct, except those rules a majority of the judges of this Court exclude by administrative order. For a willful violation of any of these standards, an attorney may be subjected to appropriate disciplinary action.

Further, W.D.Mich.L.R. 21(a) provides:

> **Disbarment, Suspension or Reprimand.** For violation of the standards of professional conduct or other good cause shown and after an opportunity to be heard, any member of the bar of this Court may be barred or suspended from practice in this Court for such period of time as the Court prescribes, or may be reprimanded or subjected to such other discipline as the Court finds proper.

The pertinent rule of the Michigan Rules of Professional Conduct is Rule 4.2:

> **Communication with a Person Represented by Counsel.** In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The rule grows out of recognition that the legal system functions best when persons in need of legal advice or assistance are represented by their own counsel. *People v. Green,* 405 Mich. 273, 291, 274 N.W.2d 448 (1979). It is designed both to protect the integrity of the attorney-client relationship and shield the represented party from overreaching by adverse counsel. *Id.* The rule seeks to assure that a represented client is fully informed before making a decision and protects the client from other lawyers' potential overreaching in:

(1) tricking a represented party into making ambiguous statements or revealing facts that could later be twisted, manipulated, and potentially abused at trial; (2) distorting a represented party's thinking about the case and undermining confidence in that party's litigation position; (3) undermining a represented party's confidence in the lawyer and possibly creating a conflict of interest and a deterioration of trust between the client and the lawyer; and (4) protecting the client from inadvertently revealing confidential (and otherwise privileged) information to opposing counsel, including conversations with the lawyer.

Michigan Ethics Opinion No. RI–219, 1994 WL 761155, Sept. 6, 1994.

■ Because the conduct of the client's representation is ultimately within the purview of counsel, counsel can prohibit communication between the client and an adverse attorney even if the client desires it. *Id.* However, the client's willingness may be considered a mitigating factor. *Green,* 405 Mich. at 292, 274 N.W.2d 448.

## IV

First, the Court accepts Ms. Searer's categorical denial that she did not provide cigarettes to Weekley. Weekley appears to have retracted his original report that he received the cigarettes from Ms. Searer, and the charge that she provided them is simply not supported by substantial competent evidence.

■ With respect to the propriety of her communications with Weekley, Ms. Searer acknowledges that she did not obtain O'Hara's consent directly. However, she argues the "comment" following Rule 4.2, legitimizes her conduct.[2] Specifically, she points to the following language: "[A] lawyer having independent justification for communicating with the other party is permitted to do so." Ms. Searer contends Weekley's representation that his attorney had changed his mind and authorized their meeting after all

---

**2.** Under M.R.P.C. 1.0(c), the "comments" that appear with the Michigan Rules of Professional Conduct are not authoritative, but are intended merely to aid the reader:

> The text of each rule is authoritative. The comment that accompanies each rule does not expand or limit the scope of the obligations, prohibitions, and counsel found in the text of the rule.

constitutes "independent justification." In view of Weekley's representation, the veracity of which she had no reason to question, she argues, it was not necessary to obtain O'Hara's express consent.

The Court rejects respondent's position for three reasons. First, the comment may not be used to expand or limit the scope of Rule 4.2. M.R.P.C. 1.0(c). The rule prohibits the subject communication between Weekley and Ms. Searer unless she either obtained O'Hara's consent or was authorized by law. To the extent respondent suggests the comment creates a third exception to the general prohibition, the suggestion must be rejected as an improper conflation of rule and comment, contrary to M.R.P.C. 1.0(c).

Second, if "independent justification," in the comment, is read in context, it can only be reasonably understood as referring to "authorized by law," in the rule. In fact, the sentence which next appears after "independent justification" gives an example of communication authorized by law. In other words, "independent justification" must be viewed as explanatory of and synonymous with "authorized by law." Weekley's assurance of O'Hara's consent, truthful or not, does not satisfy the "authorized by law" requirement.

Third, Weekley's assurance cannot be deemed to satisfy the "consent of the other lawyer" requirement either. Respondent's insistence that she had no reason to disbelieve Weekley is ridiculous. Just two days before their visit, Ms. Searer's telephone conversation with O'Hara had ended abruptly after O'Hara voiced his dismay at the notion that Ms. Searer might attempt to persuade his client to plead guilty. Although O'Hara's consent appears not to have been specifically requested and denied, there can have been no mistake about his antipathy for Ms. Searer's proposal. The news, from Weekley the very next day, that O'Hara had changed his mind represents a radical, unexplained reversal that should have made any reasonable attorney suspicious and certainly warranted a confirmatory telephone call before proceeding with the visit.

Further, according to O'Hara's recollection of the May 22, 1996 telephone conversation, Ms. Searer said she had reason to believe Weekley was dissatisfied with O'Hara's representation of him and wanted to replace him. In other words, Ms. Searer was aware that Weekley and O'Hara may have been at odds over the manner of his representation. This information, reliable or not, represents another reason why Ms. Searer cannot reasonably have simply accepted at face value Weekley's assurance of O'Hara's change of mind.

Moreover, Boyd D. Weekley, charged with heinous and highly publicized offenses for which he faced life in prison, can hardly have been viewed as a model of veracity entitled to the benefit of any doubt. Rather he should have been viewed by adverse counsel as possibly guilty of the charged offenses and desperate to use any available means to subvert the judicial process. Ms. Searer had abundant reason to mistrust Weekley and ought to have proceeded only with great circumspection.

Accordingly, the Court finds respondent's contention that she was aware of her responsibilities under Rule 4.2 and believed she had fulfilled them either damningly naive or simply disingenuous. Her acknowledgment at the show cause hearing that she could have handled the situation differently and should ideally have obtained O'Hara's express consent is a step in the right direction. Yet, her continuing insistence that she should not be disciplined because she did not intend to violate the rule bespeaks a stubborn, even cavalier, disregard of the surrounding circumstances and important purposes served by the rule. The Court finds that respondent deliberately undertook a course of action, with knowledge of Rule 4.2's requirements, that clearly falls short of satisfying those requirements. The undisputed facts sufficiently establish a willful violation of Rule 4.2.

## V

 In mitigation of her culpability, the Court acknowledges that Ms. Searer is a relatively young lawyer, admitted to the bar of this Court in October 1992. The Court also acknowledges that the improper commu-

nication was voluntarily initiated by Weekley. Further, due in part to the Court's timely intervention, it appears the improper communication ultimately resulted in little harm to the professional relationship between O'Hara and Weekley, in no prejudice to Weekley's rights, and in little disruption of the administration of justice. Finally, the Court is persuaded that respondent has learned from this experience.

For these reasons, a suspension from practice is not warranted. However, because respondent's conduct bespeaks poor judgment, reflecting adversely on her fitness to practice and on the integrity of our profession, a formal order of reprimand is appropriate. The purpose, again, is not to punish, but to seriously alert respondent to the importance of the public trust with which the practice of law is imbued, and the duty to discharge the privileges conferred thereby with conscientious care. We all make mistakes; virtue may be found in the manner in which we respond to them.

An order of reprimand consistent with this opinion shall issue forthwith.

### ORDER OF REPRIMAND

In accordance with the Court's written opinion of even date; and

The Court having found after a formal hearing and due deliberation that respondent Attorney Chris T. Searer willfully violated Michigan Rule of Professional Conduct 4.2 during her appearance on behalf of the victims in *United States v. Boyd D. Weekley,* W.D.Mich. No. 1:95–CR–157, by communicating with a represented party about the subject prosecution without the consent of the party's attorney; and

The Court having found that the misconduct was ultimately harmless, but proceeded from an exercise of poor judgment reflecting adversely on respondent's fitness to practice law and on the integrity of the legal profession; now, therefore,

**IT IS HEREBY ORDERED,** pursuant to W.D.Mich.L.R. 21(a), that Attorney Chris T. Searer is **REPRIMANDED.**