Eugene R. GRACE, Plaintiff,

v.

CENTER FOR AUTO SAFETY, Clarence M. Ditlow, et al., Defendants.

No. 93–CV–74435–DT.

United States District Court, E.D. Michigan, Southern Division.

June 20, 1994.

Daniel L. Gardner, Law Firm of Grace, Skocypec, Cosgrove & Schirm, Los Angeles, CA, for plaintiff.

Stephen N. Leuchtman, Law Firm of Sommers, Schwartz, Southfield, MI, Robert S. Harrison, Thomas W. Cranmer, Law Firm of Miro, Miro, Bloomfield Hills MI, James Howarth, Detroit MI, Michael Millikin, Joseph Papelian, General Motors Corp., Office of General Counsel, Detroit MI, for defendants.

### OPINION AND ORDER GRANTING NON-PARTY GENERAL MOTORS CORPORATION'S MOTION FOR SANCTIONS

HACKETT, District Judge.

Non-party General Motors Corporation (GM) filed a motion for sanctions against defense counsel Mark Robinson and defendant Clarence Ditlow for violating the court's protective order. Because the court finds that Robinson and Ditlow willfully violated the court's protective order, GM's motion for sanctions shall be granted.

### BACKGROUND

To protect non-party GM from having the deposition of its attorney Maynard Timm disseminated to products liability attorneys with no connection to this lawsuit, the court entered a protective order limiting access to the Timm deposition. Robinson and Ditlow flagrantly violated the protective order by wrongfully disseminating the deposition to products liability attorneys in direct contravention of the explicit language and clear intent of the order. Having acted with complete disregard for the court's order, they must now pay the consequences for their severe misconduct. To appreciate why Robinson's and Ditlow's egregious actions make the imposition of substantial sanctions necessary, the court will describe the events preceding their willful violation of the court's protective order in some detail.

#### A. Discovery Disputes

This matter arose because of discovery disputes regarding deposition and document subpoenas served in this district against non-party GM and its current and former employees. The discovery requests arose out of a defamation lawsuit which was pending in the United States District Court for the Central District of California.[1] The plaintiff in the defamation suit is former GM attorney Eugene Grace. Grace brought the libel action against Clarence Ditlow alleging that Ditlow had falsely accused him at a national press conference of directing a group of young attorneys to destroy documents which Ditlow claimed would incriminate GM in pending C/K pickup truck product liability lawsuits.

Clarence Ditlow is an attorney and the executive director of the Center for Auto Safety. The Center for Auto Safety was also a named defendant in the defamation lawsuit. The Center for Auto Safety is a consumer advocacy group founded by Ralph Nader and Consumers Union, whose work includes assisting products liability attorneys in lawsuits related to automotive safety.[2] The defamation case has now been settled. Defendants agreed to pay plaintiff $500,000 to dismiss the lawsuit.[3]

Defendants and GM first appeared before the court on October 25, 1993, to address non-party GM's motion to quash subpoena.

---

1. Although the case was before this court only in regards to the discovery taking place in this district, the demands placed on this court's resources have been substantial. The court has devoted as much or more time to resolving the discovery disputes arising in this case which was pending in another district as it has to the cases pending on this court's own docket. In addition to addressing volumes of discovery motions, the parties and GM personally appeared in court before this judge on five separate occasions, personally appeared before the magistrate judge on numerous occasions, and discussed matters with the court via telephone conference calls several times.

2. Robert D. Hersey, Jr., *Center for Auto Safety's Point Man*, N.Y. Times, Feb. 2, 1991, § 1 at 48.

3. The parties notified the court of the settlement on the record on May 19, 1994.

**594**

In their motion to quash the subpoena for documents, GM argued that defendants were using discovery for improper purposes, specifically to engage in a fishing expedition to obtain discovery for unrelated products liability actions pending against GM in regards to pickup truck fuel tank fire cases. Current and former employees of GM also filed a motion joining in GM's motion and seeking to quash subpoenas served on them for testimony and documents.

The court denied in part GM's motion and ordered that substantial discovery occur. Because whether or not the statements made about Eugene Grace were true was an issue in the defamation lawsuit, defendants were allowed to discover evidence from GM which might assist in their defense. In allowing discovery against GM to proceed, the court noted that the Federal Rules of Evidence allow for broad discovery. (Tr. of October 25, 1993, hearing at 65). Specifically, Rule 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." But in allowing discovery to proceed against a non-party, GM's argument that defendants were using the *Grace* defamation suit to conduct discovery for unrelated products liability actions against GM was not lost on the court.

At the hearing, defense counsel Robinson admitted that he had suggested bringing lawyers working on product liability actions against GM to review documents: "If you want to speed things up, I can get some plaintiff's attorneys that really know these records to go through. [sic] No, he doesn't

want that. I said fine." (Tr. of October 25, 1993, at 76). The court cautioned defense counsel Robinson that it would be inappropriate to review the documents with attorneys who represented plaintiffs in product liability actions and reminded Robinson that discovery was limited to the defamation lawsuit:

Not appropriate, not appropriate counsel. This discovery's limited to this lawsuit. It's the defamation claim in the California Court. It's the purpose of the subpoena. It's limited to that, not a general fishing expedition for all kinds of product liability cases that might be brought by someone at sometime or pending elsewhere.

If it's for some purpose other than the defamation suit, not appropriate. Clearly beyond the scope of the subpoena and certainly beyond what this court is ordering at this time.

(Tr. of October 25, 1993, at 47). Despite the court's strong admonition that the defamation lawsuit not be used as a back door to obtain discovery for use in products liability actions, that is exactly what defendant Ditlow and defense counsel Robinson did.

**B. *Purpose of Protective Orders***

In allowing discovery against a non-party to continue despite the serious and obvious potential for abuse, the court was guided by Fed.R.Civ.P. 26(b) which provides for nearly unlimited discovery of any non-privileged material relevant to a pending action. Because Fed.R.Civ.P. 26(b) provides for very broad discovery, trial courts also have discretion to issue protective orders to protect parties and witnesses under Fed.R.Civ.P. 26(c).[4] "It is impossible to set out in a rule

4. Rule 26(c) provides:

(c) **Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had;
(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
(5) that discovery be conducted with no one present except persons designated by the court;
(6) that a deposition, after being sealed, be opened only by order of the court;

all of the circumstances that may require limitations on discovery or the kinds of limitations that may be needed. The rules, instead, permit the broadest scope of discovery and leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case." 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 2036 (1970).

The Supreme Court has stated that district courts have broad discretion to issue protective orders to prevent discovery abuses:

> Rule 26, however, must be viewed in its entirety. Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984). The Supreme Court also noted, "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique characteristics of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.*

C. *Protective Order Sealing Timm Deposition*

Federal Rule of Civil Procedure 26(c) allows a protective order to be entered "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In this case, the court entered a protective order sealing the deposition of

non-party deponent, GM attorney Maynard Timm. The order was entered to protect GM from the undue burden of having a deposition taken in a defamation lawsuit to which it was a non-party used in unrelated product liability lawsuits to which it was a named party-defendant. Defendants agreed to the entry of the protective order and agreed to the exact language of the order with GM. The history of the entry of the protective order is detailed below.

Defendants took the deposition of non-party deponent Timm on October 28 and 29, 1993. In taking the deposition of GM attorney Timm, defendants asked the witness questions relating to his representation of GM. In response to certain questions, GM asserted the attorney-client and work-product privileges. Defendants objected to the assertion of the privileges. Due to defendants' and GM's disagreements over when and whether the privilege or privileges applied, the parties concluded the deposition in Magistrate Judge Komives' courtroom where Magistrate Judge Komives was available to rule on objections.[5]

After completing the deposition, but before leaving Magistrate Judge Komives' courtroom, GM moved the court to temporarily seal the deposition of Timm. The magistrate judge granted GM's motion that same day and entered a temporary protective order which limited access to the deposition to the persons named in the protective order. Counsel for GM, defense counsel, and plaintiffs' counsel approved the temporary protective order as to form and content.

Counsel for GM, and defense counsel, agreed that they would each forward a proposed final protective order to Magistrate Judge Komives by November 3, 1993. GM timely submitted their proposed final protec-

---

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and

(8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery.

The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

5. Both defendants and GM filed an appeal of certain rulings the magistrate judge made regarding whether the attorney-client privilege applied. Because the defamation case has been settled and discovery closed, those appeals are now moot.

tive order, but defendants failed to submit theirs on time. Thus, on November 3, 1993, the magistrate judge entered GM's proposed final protective order. After the November 3, 1993, protective order was entered, a conference call was held with the magistrate judge, defense counsel Robinson, and counsel for GM. Robinson stated that he misunderstood the timing for submitting a proposed final protective order. As a result, a modified final protective order was entered on November 8, 1993. That protective order is the order which Robinson and his client Ditlow violated. Because the protective order is at the crux of GM's motion for sanctions, the court quotes the final protective order entered on November 8, 1993, in full:

> Upon stipulation of counsel, the Court, on October 29, 1993, entered a Temporary Protective Order regarding the Deposition of Maynard Timm. Each of the parties was ordered to forward a proposed Protective Order to the Court.
>
> **NOW THEREFORE IT IS ORDERED:**
> That until further order of any Court of competent jurisdiction handling the above-captioned case:
>
> 1. The entire deposition of Maynard Timm given in this matter shall be sealed and kept confidential as provided herein;
>
> 2. Without specific exception by a Court of competent jurisdiction, only the following persons shall have access to this deposition or the contents thereof;
>
> a. The parties and their attorneys and office staff;
>
> b. Attorneys and their office staff on the Legal Staff of General Motors;
>
> c. The deponent and his attorneys;
>
> d. Specifically identified expert witnesses retained by the parties.
>
> 3. All individuals other than those identified in paragraph 2.a., b., and c. above, (or anyone else specifically excepted by an order from a Court of competent jurisdiction) to whom this deposition or its con-

tents are revealed shall first execute and file with this Court, with copies to counsel for the parties, counsel for General Motors and counsel for the witnesses, a statement acknowledging that such person is bound by the terms of this Order.

### D. *Violation of the Protective Order*

Although the final protective order strictly limited access to the Timm deposition, Robinson and his client Ditlow brazenly ignored the court's order and disseminated the deposition to attorneys representing plaintiffs in product liability actions pending against GM. On November 23, 1993, Robinson told counsel for GM that James Butler and Robert Cheeley of the Georgia law firm of Butler, Cheeley, Overton & Cheeley (Butler & Cheeley) had received a copy of the Timm transcript. Butler & Cheeley represents plaintiffs in truck product liability actions against GM. The firm is not and never was counsel of record in the *Grace* case. After learning that the deposition had been disseminated in violation of the protective order, GM filed its motion for sanctions against defendants on December 6, 1993. Although the motion was originally brought against both defendants Ditlow and the Center for Auto Safety and all defense counsel, GM later limited its motion to seek sanctions against Robinson and Ditlow only.[6]

### E. *The Court Afforded Defense Counsel and Defendant Ditlow Due Process*

On December 17, 1993, the court told defense counsel Robinson, who was personally before the court on another pending matter in the case, that GM's motion for sanctions would be scheduled for hearing on February 2, 1994. In addition, the court sent defendants formal notice that the hearing was scheduled for February 2, 1994. Despite almost two months notice, at the hearing, Robinson was represented by an attorney who stated that she had been asked to repre-

---

6. In addition, at the December 17, 1993, hearing, GM moved the court to vacate the protective order covering the Timm deposition on the basis that it could no longer maintain the confidentiality of the deposition transcript. GM stated that because the deposition had been disseminated to

Butler & Cheeley, the purpose of the protective order could no longer be served. Counsel for GM succinctly stated that "when the genie's out of the bottle, you can't put the genie back in." (Tr. of December 17, 1993, at 11.)

sent Robinson just one week before the hearing and did not receive documents relating to the sanctions motion until two days before the hearing. Thus, Robinson's attorney requested an adjournment. In addition, Ditlow did not even appear at the hearing. In order to allow defendant Ditlow and defense counsel Robinson due process and a fair opportunity to defend the motion for sanctions, the court granted them an additional five days to prepare for the hearing. Because Ditlow did not appear at the February 2, 1994, hearing, the court advised defense counsel that the allegations against Ditlow were serious and advised defense counsel that it was in defendant's best interests to appear personally to defend himself. The court notified Ditlow personally, in addition to his counsel, that the hearing for sanctions was rescheduled for February 7, 1994.

At the February 7, 1994, hearing, defense counsel Robinson and his client Ditlow were represented by the same attorney to defend against GM's motion for sanctions. When the proceedings reached the point where Ditlow and Robinson were determining whether to testify in their defense, they determined that their attorney had a conflict-of-interest in representing them both. Again, they requested another adjournment to afford themselves time to retain separate counsel. Although the potential conflict-of-interest should have been evident to Robinson and Ditlow, both of whom are practicing attorneys, long before the scheduled hearing, the court granted the request for an adjournment and rescheduled the hearing again for March 2, 1994. Despite the court's generous time extensions to allow Robinson and Ditlow an opportunity to respond to GM's motions for sanctions, Robinson and Ditlow failed to present a meaningful defense. The evidence presented by GM that Robinson and Ditlow violated the protective order in bad faith is uncontroverted.

## F. Robinson and Ditlow Violated Order in Bad Faith

How the deposition made its way into the hands of products liability attorneys in Georgia in violation of the protective order is a question which Robinson answered for the first time at the court's third hearing regarding GM's motion for sanctions. At the March 2, 1994, hearing, attorney Robinson, who was then represented by separate counsel than Ditlow, took the witness stand and answered questions posed by the court and by counsel for GM. Robinson admitted that he sent the deposition to his client Ditlow at the Center for Auto Safety knowing that through his position as executive director of the Center, Ditlow was consulting with products liability attorneys who represented plaintiffs in suits against GM. Although Robinson knew that Ditlow was in the habit of sharing discovery materials with those "consulting" attorneys, Robinson did not instruct Ditlow to treat the deposition covered by the protective order any differently than other materials.[7] Robinson states that after he sent the deposition to Ditlow at the Center for Auto Safety, the Center treated it in the same manner as it had been treating other discovery materials sent to the Center. Thus, one of the Center's young associate attorneys acting under the direction of Ditlow sent the Timm deposition to the Butler & Cheeley law firm.[8]

Butler & Cheeley's sole interest in the Timm deposition was to assist in their representation of plaintiffs in product liability actions against GM. The firm had no role in the *Grace* lawsuit. Moreover, the facts are undisputed that Ditlow not only knew that Butler & Cheeley represented plaintiffs in those pending product liability suits but that he was consulting with the firm in regards to those tort actions. By sending the Timm deposition to the Butler & Cheeley firm, Ditlow knowingly enabled the firm to use the

---

7. Although Robinson claims he sent a copy of the protective order to Ditlow, he alleges that the protective order did not require Ditlow to treat the deposition any differently than other discovery materials.

8. The court notes that the Center for Auto Safety's practice of disseminating all discovery ob-

tained in the *Grace* lawsuit to Butler & Cheeley was a flagrant violation of this court's repeated admonishments to defendants that discovery was limited to the defamation suit. The court limits its review of Robinson's and Ditlow's misconduct, however, to the wrongful dissemination of the Timm deposition.

sealed deposition to represent plaintiffs in pending product liability suits.

Butler & Cheeley used the Timm deposition to prosecute tort claims against GM. On December 17, 1993, in *Cameron v. General Motors*, 93–1278, 93–1279, 93–1280 (D.S.C.) a pickup truck tort action pending in South Carolina, Butler stated to the court that a summary of Timm's deposition transcripts in the *Grace* case was attached to a pleading he had filed.[9] Butler later claimed he had misspoke. Whether or not the exhibit submitted to the court in the *Cameron* case was a summary of the Timm deposition taken in the *Grace* case or a very prophetic prediction of what Timm would say if deposed, there is no question that Butler attempted to use the sealed deposition in the *Cameron* products liability suit. He informed the *Cameron* court that he had a copy of the Timm deposition taken in the *Grace* case and that he would provide a copy to the court if the court ordered him to do so.[10] Butler's uncontroverted attempts to use the Timm deposition in the *Cameron* case were known to Ditlow and Robinson. In addition to Butler's attempts to use the Timm deposition in the *Cameron* lawsuit, Butler also attempted to use the deposition in *Marlow v. General Motors, et al.*, another C/K truck product liability action, in which Butler & Cheeley represented plaintiff.[11] Butler's misuse of the illegally obtained Timm deposition is the direct result of Robinson's and Ditlow's misconduct. Robinson and Ditlow have brazenly admitted that Ditlow consulted with Butler & Cheeley regarding C/K pickup truck design defect litigation. Despite this insolent admission, they boldly deny that sharing the deposition with Butler & Cheeley violated the court's protective order.

## ANALYSIS

### A. Butler & Cheeley was not in Attorney–Client Status with Defendants

 Ditlow and Robinson have attempted to avoid responsibility for violating the court's protective order by arguing that Ditlow had an attorney-client relationship with Butler & Cheeley. This wild allegation is wholly unsupported by the record. In determining whether an attorney-client relationship exists, the focus is on the client's subjective belief that he is consulting a lawyer in the lawyer's professional capacity and his intent is to seek professional legal advice. *Dalrymple v. National Bank & Trust Co.*, 615 F.Supp. 979, 982 (W.D.Mich.1985). Although a formal contract is not necessary,

9. Attorney Butler later claimed that he had misspoke and alleged that the exhibit was not a summary of the Timm deposition but what he believed "Mr. Timm would testify to based on our own independent investigation."

> I had something that was important to mention here and I forgot it. If the court could give me a second. I misspoke. What we've attached to this brief is not a summary of the Timm deposition given in *Grace vs. Center for Auto Safety*, but what Lee Tarte and I believe Mr. Timm will testify to based on our own independent investigation. And it's important that I make that point for this reason. Lee Tarte and I have Mr. Timm's deposition from the case of *Grace vs. Center for Auto Safety*. I can't give it to Kendall and John. I'm a consulting lawyer for the Center for Auto Safety at Clarence Ditlow's request.

Butler's claim that he could predict what Maynard Timm would testify to before deposing him based on his "own independent investigation" is suspect. The court finds Butler's first statement, that he was attaching a summary of the Timm deposition taken in the *Grace* case, more likely, especially when the "predicted testimony" is compared to the testimony actually given in the *Grace* case.

10. His exhibit setting forth either "predicted" testimony or a summary of the Timm deposition states in its first paragraph:

> On October 29 and 30, 1993, Mr. Maynard Timm was deposed in the case of *Eugene Grace v. Center for Auto Safety....* While Plaintiffs' Atlanta counsel possess a copy of the deposition, it is currently under court seal and Plaintiffs cannot release it absent an order from a court requiring them to do so.

11. On December 3, 1993, Butler wrote to attorney Chilton Varner, an attorney representing GM in *Marlow* and requested permission to use the Timm deposition taken in the *Grace* action in the *Marlow* case. The letter states:

> We request that GM either provide copies of all depositions of Messrs. Grace, Eyres, Kendro, Timm, Orlando, Cicchowski (sic), Nelson, Coffey, Babcock and McKeen taken in *Grace v. Ditlow* to us, or agree we may request and receive them from defense counsel in the *Grace* case.
>
> As time is short before trial, we must have an early response from you, so that we may file an appropriate motion if GM is not agreeable to our request.

the court may look to the intent and conduct of the attorneys. *Waggoner v. Snow, Becker, Kroll, Klaris, & Krauss*, 991 F.2d 1501, 1505 (9th Cir.1993). In this case, the evidence presented shows that the Center disseminated the Timm deposition to the Butler & Cheeley firm as part of its ongoing consultation with the firm regarding pending products liability suits. Attorney Ditlow and his legal staff at the Center consulted with Butler & Cheeley as co-advocates representing plaintiffs in product liability cases, not as client.

No evidence supports Ditlow's claims that Butler & Cheeley counseled him in regards to the *Grace* lawsuit. The firm was never paid for its alleged "assistance" in the *Grace* matter, never filed an appearance, never assisted in the preparation of motions, and never participated in discovery. At the time Ditlow sent the deposition to Butler & Cheeley, four attorneys had filed an appearance in the *Grace* lawsuit, none of whom were with the Butler & Cheeley law firm. Mark Robinson was lead counsel. In addition, defense counsel of record in the *Grace* case included William Keital of Hawkins, Schnabel, Lindahl, & Beck, and Leslie Brueckner and Brian Wolfman of the Public Citizen Litigation Group.[12] Clearly, the protective order did not allow for Ditlow to disseminate the deposition to any other practicing attorneys, as long as Ditlow asked them for some free legal advice.

At the March 2, 1994, hearing, the court determined that Robinson and Ditlow violated the protective order by disseminating the deposition to products liability attorneys with no role in the *Grace* lawsuit.[13] The protective order unequivocally states that the deposition may only be disseminated to the "parties and their attorneys and office staff." In defending against GM's motion for sanctions, defendants have repeatedly argued

that Ditlow was free to disseminate the Timm deposition to any of his consulting attorneys whether or not those attorneys were of record in the *Grace* case. It is undisputed that the Center for Auto Safety has professional relationships with products liability attorneys nationwide. In fact, part of the Center for Auto Safety's budget comes from fees generated by the Center's research for product liability lawyers.[14] Defendants' argument suggests that defendants could disseminate the deposition to an infinitely limitless number of plaintiffs' attorneys with no involvement in the *Grace* defamation suit.

Robinson's and Ditlow's semantic games are not persuasive. The protective order unambiguously limited dissemination of the Timm deposition to the "parties and their attorneys and office staff" in the *Grace* defamation case. Robinson's and Ditlow's argument that the protective order should have stated that dissemination of the Timm deposition was limited to "attorneys of record in the *Grace* case" is specious. It was unnecessary for the order to state that it applied to attorneys in the *Grace* case, just as it was equally unnecessary that the order state that it applied to "parties of record in the *Grace* case." The Timm deposition was taken in the *Grace* lawsuit and the protective order was so captioned. The court declines defendants' invitation to perform mental gymnastics to distort the protective order in a manner which would render it meaningless. The protective order clearly did not allow Ditlow to disseminate the deposition to the Center's "consulting" products liability attorneys.

Robinson and Ditlow further argue that because GM's entire legal staff had access to the Timm deposition, defendant Ditlow should have been able to give the deposition to any attorneys with whom he consulted. This argument is at odds with the clear language of the protective order and controverts the very purpose of the order. The

---

12. In addition, Stephen Leuchtman also appeared in this court as local counsel.

13. Although the court imposes sanctions based on the wrongful dissemination of the deposition to products liability attorneys, the court notes that defendants also violated the protective order by attaching excerpts of the Timm deposition to pleadings filed in this court and filed in the

district court in the Central District of California without filing the Timm excerpts under seal.

14. Robert D. Hersey, Jr., *Center for Auto Safety's Point Man*, N.Y. Times, Feb. 2, 1991, § 1 at 48. The record does not indicate whether the Center for Auto Safety was paid for disseminating the Timm deposition to the Butler & Cheeley firm.

protective order explicitly provides that the deposition was available to "Attorneys and their office staff on the Legal Staff of General Motors." The protective order was entered to protect GM from potential litigation abuses. There was no potential for abuse in allowing members of GM's own legal staff to access the deposition of their co-worker and colleague—fellow GM attorney Maynard Timm. The purpose of the protective order was to prevent the deposition of non-party deponent Timm from falling into the hands of products liability attorneys who might use the deposition in lawsuits where GM was a party-defendant. In contravention of the protective order, the discovery abuses sought to be avoided occurred.

## B. Culpability of Client Ditlow

The record before the court establishes that Robinson and Ditlow violated the court's protective order and appropriate sanctions shall be imposed against them. In sanctioning defendant Ditlow, the court does not act under the traditional agency theory that the attorney's misconduct legally binds his client. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Although the Supreme Court has held that federal courts have the power to impose sanctions for attorney misconduct which impacts on the innocent client, *id.*, some courts, including the Court of Appeals for the Sixth Circuit, are reluctant to impose sanctions against an innocent client for the faults of the attorney.[15] But this case presents the court with both a delinquent lawyer and a culpable client. Ditlow was not an ordinary client, but an attorney-client who personally reviewed every document, deposition, and discovery material. Ditlow is not the innocent victim of his lawyer's transgressions, but a wrongdoer himself who having read the protective order, willfully disseminated the sealed deposition anyway to products liability attorneys with no official role in the *Grace* lawsuit.

## C. Disobedience of Court Orders

■ Disobedience of court orders merits punishment. In *Kleiner v. First Nat'l Bank,*

the Court of Appeals for the Eleventh Circuit explained the importance of obeying court orders:

> As a fundamental proposition, orders of the court "*must be obeyed* until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process[.]" Parties and counsel alike are bound by this admonition. If the order appears to be incorrect, the proper course of action lies in review:
>
> > If the order is believed to be incorrect, the remedy generally is to seek a change in the order—usually by a motion to quash—and, if this is denied, then to appeal and, absent a stay, promptly to comply with the order.

751 F.2d 1193, 1194 (11th Cir.1985) (citations omitted). In this case, Robinson and Ditlow never challenged the validity of the protective order, they simply ignored it.

■ Litigants cannot choose to flout validly entered orders of the court. The importance of obeying court orders was stressed by the Court of Appeals for the First Circuit in *Vakalis v. Shawmut Corp.*, 925 F.2d 34, 37 (1st Cir.1991) (Breyer, J.). In *Vakalis,* the court affirmed the dismissal of an action where the attorney failed to pay a $10,000 fine imposed under Rule 11 despite his good faith belief that he should not have been fined. The court explained that the attorney could have paid the fine, litigated the case, and then appealed the sanction or asked the court to stay the sanction pending an appeal, but the attorney could not simply ignore court's order. *Id.* at 36. In this case, Robinson and Ditlow never even contested the validity of the court's order. They just disregarded it.

## D. Sanctions Pursuant to the Court's Inherent Powers

Having done so, it is necessary that the court invoke its inherent powers to impose sanctions for the bad faith misconduct of defense counsel Robinson and his attorney-

---

**15.** *Coleman v. American Red Cross*, 23 F.3d 1091, 1095 (6th Cir.1994). *Eash v. Riggins Trucking,* *Inc.*, 757 F.2d 557, 564, n. 10 (3rd Cir.1985).

client Ditlow. "That courts have inherent powers—powers vested in the courts upon their creation, and not derived from any statute is not disputed." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557 (3rd Cir.1985) (citations omitted).

 The foremost case on the inherent powers of the federal court is *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In *Chambers*, the Supreme Court upheld the district court's imposition of monetary sanctions against plaintiff in the amount of $996,644.65, the full amount of defendant's litigation fees and expenses, for plaintiff's fraudulent conduct in attempting to deprive the court of diversity jurisdiction and other obstructionist tactics, including " 'a series of meritless motions and pleadings and delaying actions.' " 501 U.S. at 38, 111 S.Ct. at 2129. In affirming the imposition of severe monetary sanctions, the Supreme Court reviewed the scope of inherent powers of the federal courts:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others."

For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43, 111 S.Ct. at 2132 (citations omitted). Federal courts may use their inherent powers to supervise and discipline attorneys, who are officers of the court. "By controlling an attorney's conduct, the court fulfills the duty it owes to its own preservation, to members of the general public, and to those members of the profession who do cooperate and are in sympathy with the proper administration of the law."[16] Inherent powers of the federal court are comprehensive and include the authority to control admission to its bar and to discipline attorneys who appear before it,[17] to bar a disruptive criminal defendant from the courtroom despite his Sixth Amendment right to confront witnesses,[18] to dismiss a lawsuit or enter a default judgment,[19] to impose fines,[20] and to assess attorneys fees.[21]

---

16. Robert E. Rodes, Jr., Kenneth F. Ripple, & Carol Mooney, *Sanctions Imposable for Violation of the Federal Rules of Civil Procedure* 74 (Federal Judicial Center 1981).

17. *See* e.g. *Chambers*, 501 U.S. at 43–44, 111 S.Ct. at 2132 (citing *Ex parte Burr*, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824)); *Eash*, 757 F.2d at 561.

18. In *Illinois v. Allen*, 397 U.S. 337, 346, 90 S.Ct. 1057, 1062, 25 L.Ed.2d 353 (1970) the Court stated: "It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes." It would be an even graver degradation to our judicial system and the legal profession to allow attorneys in civil lawsuits to willfully violate court's protective orders without serious consequences resulting. Attorneys in civil lawsuits should be held to higher standards of professionalism than criminal defendants and must respect lawful orders of the court.

19. *See Chambers*, 501 U.S. at 45–46, 111 S.Ct. at 2133; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *Link v. Wabash R.R. Co.*, 370 U.S. 626,

630–631, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962).

20. *Chambers v. NASCO, Inc.*, 501 U.S. at 32, 111 S.Ct. at 2123; *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 630 (8th Cir.1984); *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1210 (11th Cir.1985).

21. *Chambers*, 501 U.S. at 54–56, 111 S.Ct. at 2138 (court acted within its discretion in assessing as a sanction for plaintiff's bad-faith conduct the entire amount of defendant's attorney fees), *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (court may assess attorney fees as a sanction for "willful disobedience of a court order.") (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)); *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428, 43 S.Ct. 458, 466, 67 L.Ed. 719 (1923) (court has discretion to impose attorney fees representing the entire cost of the litigation as part of contempt sanctions), see also *Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302 (5th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992) (when district court awarded attorney fees to defendants in amount of $2.4

### E. *Purpose of Sanctions*

The imposition of sanctions in this case against Ditlow and Robinson serves the dual purpose of vindicating judicial authority and compensating GM for the expenses caused by Robinson's and Ditlow's willful violation of the protective order. These two functions: maintaining the integrity of the court and making GM whole for the expenses caused by defense counsel and defendant's misconduct are explained below.

### 1. *Vindicating the Authority of the Court*

 The federal court's power to police itself in order to uphold the integrity and authority of the judicial system is imperative to the efficient functioning of the federal judiciary. The court's authority to sanction those violating its orders is a power "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting *Cooke v. United States,* 267 U.S. 517, 539, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925). Sanctions are appropriate "to vindicate the authority of the federal judiciary by demonstrating that severe consequences flow to a party whose counsel deliberately and intentionally flaunts a court's protective order for the purpose of gaining advantage ... through a means explicitly prohibited by the court." *Coleman v. American Red Cross,* 23 F.3d 1091, 1100 (6th Cir.1994) (Ryan, J., dissenting). In this case, Robinson's and Ditlow's contumacious conduct threatens the authority and dignity of the court and cannot be tolerated. Their flagrant disregard for this court's order must be met with sanctions severe enough to vindicate the authority of the court and send a strong message that such gross misconduct is completely unacceptable in our judicial system.

### 2. *Compensating GM for Harm Done*

 In addition to imposing sanctions to punish defense counsel and defendant for willfully disobeying the court's protective order, sanctions must also be imposed to compensate GM for the harm done and the expenses caused by the misconduct. There is no question that GM was harmed by the wrongful dissemination of the sealed deposition to products liability attorneys with no role in the *Grace* lawsuit. Defense counsel and defendant have incredulously argued that GM was not harmed by their violation of the court's protective order. They allege that the dissemination of the Timm deposition could not have harmed GM because the deposition lacks any substantive testimony but is merely a collection of assertions of attorney-client and work-product privilege. Their eleventh-hour arguments are belied by the reality of the manner in which the leaked deposition was used. The facts are undisputed that products liability attorney Butler told the *Cameron* court that he had a copy of the deposition, that it was under seal, and that the number of times GM asserted the attorney-client privilege suggested that GM was engaged in a cover-up and was hiding crucial evidence.

The manner in which Butler used the illegally obtained deposition left GM with no choice but to move that the protective order be vacated. Defendants have argued that the fact that GM moved to have the protective order vacated evidences the fact that their violation of the protective order did not harm GM. Nothing could be further from the truth. GM was forced to request that the protective order be lifted to mitigate the damage done by plaintiffs' attorneys who were misleading at least one court by referencing the Timm deposition, stating that it was under seal, and then mischaracterizing its contents to suit their needs. The dissemination of the Timm deposition injured GM, defeated the purpose of the protective order, and put GM in the position of moving to vacate the protective order to avoid continuing the false impression created by Butler & Cheeley that GM was hiding incriminating evidence.

million for litigation expenses incurred as a result of plaintiff's violation of a covenant not to sue, district court acted within its inherent sanctioning powers when it accepted defendants' affidavits of expenses in amount of $2.4 million as uncontroverted as sanction for plaintiff's failure to comply with court order setting forth procedures for challenging claimed expenses).

The bad faith actions of Robinson and Ditlow unquestionably put GM to great and unwarranted expense both in the wasted time spent preparing the protective order and in the expenses incurred in bringing their motion for sanctions. Sanctions must be imposed to compensate GM for those expenses which were the direct result of Robinson's and Ditlow's misconduct.

### F. Sanctions Sought by GM

In determining which sanctions to impose, the court considers those sought by GM. GM has moved the court to (1) award costs and attorney fees to GM for their total costs in responding to defendants' discovery requests in the amount of $122,142.16, or alternatively, assess costs of at least $36,961.69 which represents GM's costs in defending the Timm deposition, preparing the protective order, and prosecuting the motion for sanctions; (2) sanction attorney Robinson and Ditlow jointly for the violation of the protective order; (3) impose such other costs and remedies as the court deems appropriate; and, (4) bar further discovery of GM by defendants. Because the parties have settled the lawsuit, GM and defendants agree that GM's motion for an order barring further discovery is now moot. The court considers GM's request that the court sanction attorney Robinson and Ditlow jointly and GM's request that the court impose such other costs and remedies as the court deems appropriate to be synonymous and thus, addresses those two requests together.

### 1. Attorney Fees

▮ Federal courts may assess attorney fees as a sanction for " 'willful disobedience of a court order.' " *Chambers*, 501 U.S. at 45, 111 S.Ct. at 2133 (quoting *Alyeska Pipeline Srv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)). Monetary sanctions in the form of

attorney fees are the most common sanctions imposed by federal courts. *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 561 (3rd Cir. 1985). "[T]he district court's inherent authority to impose a monetary sanction applies equally to parties and their attorneys." *Ray A. Scharer & Co. v. Plabell Rubber Products, Inc.*, 858 F.2d 317, 321 (6th Cir.1988). When the court finds that its order has been willfully disregarded, it has discretion to "impose as part of the fine attorney's fees representing the entire costs of the litigation." *Chambers*, 501 U.S. at 45, 111 S.Ct. at 2133 (quoting *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428, 43 S.Ct. 458, 466, 67 L.Ed. 719 (1923)).

In this case, GM, who is a non-party to the lawsuit, has submitted affidavits stating that its costs in responding to defendants' discovery requests totals $122,142.16. Of that amount, GM has submitted affidavits showing that its costs in defending the Timm deposition, preparing the protective order, and bringing and prosecuting the motion for sanctions totals $36,961.69. Although case law supports fining Robinson and Ditlow for GM's total attorney fees incurred in responding to discovery requests, the court exercises its inherent powers with restraint. In order to tailor the sanction imposed to the offense committed, the court will only access attorney fees against Robinson and Ditlow for GM's costs associated with defending the Timm deposition, preparing the protective order in question, and litigating the motion for sanctions. Thus, the court imposes attorney fees against Robinson and Ditlow in the amount of $36,961.69.[22]

### 2. Available Sanctions

▮ The court next considers GM's request that the court impose "such costs and remedies as the court deems appropriate." In arriving at the appropriate sanctions, the court has considered the available alternatives. In deciding which of the available alternatives is most appropriate, the court

---

22. The court has summarily dismissed Robinson's and Ditlow's argument that attorney fees should not be assessed because GM is represented by in-house counsel as opposed to counsel retained from outside the corporation. Nothing

suggests GM's in-house counsel are working for free or that GM should not be compensated for the expenses incurred as a result of Robinson's and Ditlow's misconduct.

weighs the seriousness of the offensive conduct against the Supreme Court's admonition that "inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132 (citing *Roadway Express,* 447 U.S. at 764, 100 S.Ct. at 2463).

### a. *Dismissal/Default Judgment*

█ One particularly severe sanction within the court's discretion is the power to dismiss a pending action. *Chambers,* 501 U.S. at 45–46, 111 S.Ct. at 2133; *Roadway Express,* 447 U.S. at 765, 100 S.Ct. at 2463. In the case where the offending party is the defendant, as is true in this case, the court has the discretion to impose the harsh sanction of finding the culpable defendant liable in the form of a default judgment. *Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885, 888 & n. 10 (5th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968), *see also Link v. Wabash R.R. Co.,* 370 U.S. 626, 629–33, 82 S.Ct. 1386, 1388–90, 8 L.Ed.2d 734 (1962). Although entering a default judgment against defendant Ditlow might be an appropriate sanction based on the egregious misconduct which occurred in this case, the court shall impose less severe monetary sanctions.[23]

### b. *Disbarment/Disciplinary Investigation*

In addition to the harsh sanction of entering a default judgment and dismissal, federal courts have also sanctioned contemptuous counsel by barring them from practicing in the federal court where the misconduct occurred. *See, e.g., NASCO, Inc. v. Calcasieu Television & Radio, Inc.,* 124 F.R.D. 120, 143–44 (W.D.La.1989), *aff'd sub nom. Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Alternatively, federal courts have also sanctioned lawyers who willfully violate their protective orders

by requesting that the state bar in the state in which the offending lawyer practices begin a disciplinary investigation of that lawyer. *See, e.g., Alexander v. Chicago Park Dist.,* 927 F.2d 1014, 1025 (7th Cir.1991), *cert. denied sub nom. Cook v. Alexander,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992) (referring opinion to Illinois Attorney Registration and Disciplinary Commission with suggestion that it investigate firm which disobeyed court's order to disburse settlement money to class members). *Marrocco v. General Motors Corp.,* 966 F.2d 220 (7th Cir. 1992) (where plaintiffs' counsel and plaintiffs' experts violated protective order requiring the parties to preserve the condition of a car which was crucial evidence in a products liability action, the court submitted a copy of its opinion imposing sanctions to the Michigan bar with a request that a disciplinary investigation be commenced). The court notes that Robinson's and Ditlow's willful violation of the protective order is an egregious affront on the integrity of the court which would justify imposing severe sanctions, including barring the attorneys from practicing in the United States District Court for the Eastern District of Michigan or referring the matter for disciplinary investigation to the state bars where they practice. Despite the potential availability of these sanctions, the court shall impose less severe penalties.

### c. *Fines*

█ Besides the harsh sanctions of dismissal, disbarment, or directing that a disciplinary investigation begin, less severe sanctions are also available to federal courts to sanction attorney misconduct. Imposing fines against counsel who willfully violate the court's orders is a less severe and permissible sanction.[24] For example, in *Malautea v.*

---

**23.** Because the parties have already settled the lawsuit, an order entering default judgment in favor of plaintiff is no longer possible.

**24.** The court notes that several courts have attempted to sanction contemptuous counsel by ordering the offending party to reimburse the court for its costs, including an hourly charge. *See, e.g. Ray A. Scharer & Co. v. Plabell Rubber Products, Inc.,* 858 F.2d 317, 321 (6th Cir.1988) (reversing district court order assessing fine for

court's trial time when parties reached a settlement during the trial but later aborted settlement in amount of $19,200, representing 32 hours of the court's time billed at $600 per hour); *see also Martinez v. Thrifty Drug & Discount Co.,* 593 F.2d 992, 994 (10th Cir.1979) (assessing costs of impanelling a jury on eve of trial in violation of local rule), *White v. Raymark Indus., Inc.,* 783 F.2d 1175 (4th Cir.1986) (assessing juror costs of $2,000 as sanction under local rule against manufacturer who refused to negotiate settlement

*Suzuki Motor Co.,* 987 F.2d 1536, 1547 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 181, 126 L.Ed.2d 140 (1993), the Court of Appeals for the Eleventh Circuit affirmed the district court's order fining defendants $5,000 and each defense attorney of record $500 for failing to cooperate in discovery. In addition, the court affirmed the imposition of a $100 fine against plaintiffs' attorneys from the lawfirm Butler, Wooten, Overby, & Cheeley for attempting to compel a non-party lawfirm to produce documents which they knew had been sealed by court order. *Id.* at 1539, n. 2. Moreover, in *Kehm v. Procter & Gamble Mfg. Co.,* 724 F.2d 630, 630 (8th Cir.1984), the Court of Appeals for the Eighth Circuit upheld the imposition of a $10,000 fine against an attorney who violated a protective order by selling documents obtained through discovery in the *Kehm* lawsuit to attorneys representing plaintiffs bringing similar tampon product liability actions against Procter & Gamble.[25]

Similarly, in this case, Robinson and Ditlow supplied the Timm deposition taken in the defamation lawsuit to product liability attorneys barred by the explicit language of the protective order from having access to it. Their brazen misconduct offends the authority and dignity of the court and threatens the efficient running of the court system. In this case, the imposition of GM's attorney fees and expenses incurred as a result of Robinson's and Ditlow's obstreperous conduct is inadequate to appropriately sanction their misconduct. In order to fully vindicate the authority of the court, additional sanctions are necessary. Thus, the court shall fine Robinson and Ditlow each $5,000.

## CONCLUSION

In sum, the court finds that Robinson and Ditlow brazenly disregarded the court's pro-

tective order by disseminating the sealed Timm deposition to products liability attorneys with no role in the *Grace* defamation case. Despite the availability of substantial harsh sanctions, in its discretion, the court shall impose less severe penalties which the court believes will minimally compensate GM for the harm done and vindicate the authority of the court. Accordingly,

IT IS ORDERED that GM's motion for sanctions hereby is GRANTED.

IT IS FURTHER ORDERED that Robinson and Ditlow pay GM's attorney fees incurred in this matter in the amount of $36,961.69.

IT IS FURTHER ORDERED that Robinson pay a $5,000 fine and Ditlow pay a $5,000 fine to the Clerk of the Court for the Eastern District of Michigan within 30 days of the date of this opinion and order.

---

during week prior to trial and settlement was reached only after 65 jurors had been summoned and appeared for jury duty). In this case, the court's costs in preparing for and conducting the three hearings regarding GM's motion for sanctions is at least 20 hours and thus, a sanction for the court's time alone at $600 per hour would total $12,000. In its discretion, however, the court does not impose such a sanction.

**25.** *See also Jones v. Winnepesaukee Realty,* 990 F.2d 1 (1st Cir.1993) (affirming imposition of $5,000 fine against plaintiffs for their repeated

failure to attend pretrial hearings); *Lemaster v. United States,* 891 F.2d 115, 120 (6th Cir.1989) (imposing fine of $19,572.71 under Rule 11 against plaintiffs and plaintiffs' counsel for filing of groundless lawsuit); *Herron v. Jupiter Transp. Co.,* 858 F.2d 332 (6th Cir.1988) (fining plaintiff's attorney $9,035.22 for filing frivolous lawsuit and repeatedly failing to comply with court's orders); *Scarfo v. Cabletron Sys.,* 153 F.R.D. 9 (1994) (accessing fine of $1,000 against defendant for failing to cooperate in discovery).