[974 NYS2d 15]

In the Matter of Jeffrey M. Sondel, an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, October 1, 2013

#### APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Kevin E.F. O'Sullivan* of counsel), for petitioner.

*Jeffrey M. Sondel*, respondent pro se.

#### OPINION OF THE COURT

Per Curiam.

Respondent Jeffrey M. Sondel was admitted to the practice of law in the State of New York by the First Judicial Department on June 16, 1980. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within the First Judicial Department.

By petition, dated October 22, 2012, the Departmental Disciplinary Committee seeks an order, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.3, suspending respondent from the practice of law for seven months predicated upon similar discipline imposed by the Department of Justice's Executive Office for Immigration Review (EOIR) dated March 10, 2011, which was affirmed on November 3, 2011 by the Board of Immigration Appeals (BIA) (*In re Sondel*, file D2007-276 [BIA 2011]), or in the alternative, sanctioning respondent as this Court deems appropriate. The EOIR suspended respondent for his contumelious or obnoxious conduct at an immigration hearing.

On January 17, 2007, respondent appeared before an Immigration Judge (IJ) Jack Weil, at the El Centro Immigration Court, located inside a California Detention Center, for a conference in the *Matter of M.H.*, in connection with three Burmese nationals seeking asylum, M.H., T.W., and T.Z. This was respondent's first appearance before IJ Weil. After IJ Weil informed respondent that he had never had a Burmese asylum case, respondent agreed to submit to the court background materials about the political situation in Burma. Respondent submitted the materials to the court days before the next scheduled hearing.

On April 3, 2007, respondent returned to the El Centro court for M.H.'s and T.W.'s individual hearing. At the hearing, IJ Weil admitted that he had not yet read the background materials, but would do so after the hearing. Respondent refused IJ Weil's suggestion to put over the matter, stating that "I will not come back . . . to sit here and do nothing but listen to you make a decision when I can be called on the telephone . . . [F]or me to fly out here . . . just to hear a decision." IJ Weil then informed respondent that he might require further testimony at the next date and reminded respondent that he had known that the case was located in El Centro when he accepted it. Respondent later stated that were IJ Weil to require him to return to the El Centro court, respondent would advise the BIA and "[t]he higher officials in Washington of what is happening." IJ Weil took this to be a threat.

During the asylum hearing, respondent stated to IJ Weil: "I don't know how you do things here but it's not satisfactory to me . . . And it's not permissible . . . It's not acceptable." Later, after informing IJ Weil that he would need 10 minutes for closing argument, respondent rejected the court's suggestion that he "start wrapping it up," stating that "I will only do a brief argument, Judge, if I believe it's appropriate" and then continued to argue.

The next day, April 4, 2007, T.W.'s individual hearing was held at which time IJ Weil and respondent discussed the court's lack of familiarity with the situation in Burma and respondent's lack of familiarity with the way the immigration court was run in El Centro. Respondent then reiterated that it was difficult for him to travel back and forth between El Centro and New York and asked IJ Weil to take over two cases he has pending with IJ Staton. He had previously encountered some difficulty in the course of those cases, resulting in the Office of General Counsel's (OGC) June 12, 2007, issuance of an informal admonition against respondent for violating 8 CFR 1003.102 (l).*

IJ Weil acknowledged respondent's unfamiliarity with how to practice in El Centro and informed respondent that there were

---

* At the time of the underlying conduct, 8 CFR 1003.102 (l) provided for the imposition of discipline against an attorney who "[r]epeatedly fails to appear for scheduled hearings in a timely manner without good cause." The admonition was based on respondent's failure to appear at conferences. Effective January 20, 2009, after the admonition, the statute was amended to expressly include the failure to appear at pre-hearing conferences as a ground for discipline.

no local rules because everyone treated each other with trust and respect. IJ Weil also acknowledged that "it's difficult when you're out of town because you're not accustomed to that." IJ Weil then stated that "once you get here and you see the environment, you'll learn it's a great environment to work. And I look forward to seeing you within the next couple of court dates."

Respondent next appeared before IJ Weil on September 10 and 11, 2007, in connection with the asylum cases of T.W. and T.Z. Both clients were granted asylum and the appearances were uneventful from a disciplinary standpoint.

On September 20, 2007, IJ Weil referred the matter of respondent's conduct for disciplinary purposes to the Disciplinary Counsel for EOIR, stating that he "[did] not believe that any person deserves to be treated the way Mr. Sondel treated [him]." On July 28, 2008, the EOIR counsel filed a notice of intent to discipline against respondent for having engaged in contumelious or otherwise obnoxious conduct at the April 3 and 4, 2007 hearings, in violation of 8 CFR 1003.102, and seeking to impose a one-year suspension. The Department of Homeland Security (DHS) moved for reciprocal discipline. Respondent's answer denied certain allegations and raised defenses and he submitted supporting documentation.

On December 29, 2008, the disciplinary matter was assigned to IJ Mimi Tsankov. On October 19, 2009, she recused herself explaining that IJ Weil had recently been assigned to the position of Assistant Chief Immigration Judge (Acting) for Training and Education, making him her superior which created an appearance of a conflict.

By letter dated June 29, 2010, respondent apologized to IJ Weil, stating that he "regret[ted] that [he] made ill-advised and inappropriate remarks during [M.H.'s] hearing and . . . realize[d] that. . . [he] should have been more temperate and respectful." Respondent explained that it was his first individual hearing before IJ Weil and in the El Centro court, he had previously represented other members of M.H.'s family, who had expressed concern over M.H.'s lengthy detention and expensive bond, and he became "caught up in [his] client's case."

Administrative Law Judge (ALJ) Ellen K. Thomas, took over the disciplinary proceedings. On March 20, 2010, she held the first stage of the three-stage disciplinary hearing. At the hearing, taped recordings were played into the record.

By order dated May 20, 2010, ALJ Thomas denied respondent's motion to dismiss finding that the term "contumelious or obnoxious" was not too vague to provide notice of the prohibited conduct and that

> "[t]he tape recordings provide the best evidence of what happened at the hearing in *Matter of MH*, first, because they are more accurate than the transcript, and second, because the recordings convey . . . the volume, pace, tone, and manner of the respondent's speaking both to and about the Immigration Judge and opposing counsel. The audiotapes reflect not only what the respondent said, but also how he said it."

ALJ Thomas found that IJ Weil's conduct did not constitute a defense, identifying a number of instances of respondent interrupting or speaking over IJ Weil, or complaining that IJ Weil was not prepared and had not read certain documents, and noting that he accused IJ Weil of disliking New Yorkers, and challenged the fairness of the proceeding, describing his client's treatment as "get[ting] to the point of a travesty." ALJ Thomas noted that, while respondent did not use the term collude, he accused IJ Weil of doing the government's work, leaving its attorney almost nothing to ask on cross-examination.

ALJ Thomas stated that the audiotapes reflected that respondent frequently engaged in sarcastic behavior, mostly directed at IJ Weil, and engaged in tangents and outbursts, including throwing down his glasses. She described "respondent's tone and the manner . . . [as being] frequently aggressive, belligerent, and confrontational" as well as intimidating.

The second stage of the disciplinary hearing was held on July 7, 2010, at which time, inter alia, respondent submitted exhibits into evidence and IJ Weil testified.

On September 29, 2010, ALJ Thomas issued a memorandum of decision and order sustaining the charge and finding that discipline should be imposed. She noted that, for the most part, the factual allegations were established by the audiotapes and transcripts, which respondent sought to put into context by explaining the circumstances which purportedly put pressure on him and contributed to his conduct. ALJ Thomas further noted that respondent admitted entering the hearing with concerns about IJ Weil's fairness based upon the disciplinary case opened in connection with IJ Staton's complaint. ALJ Thomas noted that "respondent described the El Centro Im-

migration Court as having a very intimidating atmosphere and restricted physical space, and as being unfriendly to outsiders. He also criticized the procedures used by the court," and IJ Weil's lack of preparation and lack of knowledge of Burma.

In finding misconduct, ALJ Thomas repeated facts and issues discussed in her order denying respondent's motion to dismiss. She rejected respondent's claim that the comments made at M.H.'s hearing were not meant to be sarcastic, finding that "the tone and tenor of many of his remarks . . . cannot reasonably be construed in any other way." ALJ Thomas further noted that respondent's misconduct was also directed at the government's trial attorney, requiring IJ Weil to insist that respondent stop disparaging the attorney.

ALJ Thomas concluded that the government's factual allegations were supported by the evidence, leaving only a determination as to whether the Disciplinary Counsel established that the behavior was contumelious or obnoxious, and would constitute contempt of court in a judicial proceeding. She found:

> "[R]espondent's conduct far exceeded the fair boundaries of zealous advocacy, that he made a number of ad hominem attacks on the professional integrity of the presiding judge as well as that of the government's trial attorney, and that he repeatedly engaged in insolent and discourteous conduct degrading both to the tribunal and to the judicial process. The respondent's tone and the manner in which he addressed [IJ Weil] was frequently aggressive, belligerent, and confrontational."

Applying Black's Law Dictionary's definitions of contumelious, contumely, and obnoxious, which included "abusive . . . insulting language," ALJ Thomas found that, regardless of the claimed intent, "by any objective standard much of [respondent's] conduct at the hearing . . . can unequivocally be characterized as obnoxious or contumelious or both" and would justify a finding of contempt in a state or federal court. In so finding, ALJ Thomas stated that the conduct at issue only needed to "furnish the predicate for a finding of contempt," rejecting respondent's suggestion that the government was required to prove all four elements needed for a conviction for criminal contempt pursuant to rule 42 of the Federal Rules of Criminal Procedure or 18 USC § 401 (1) (citing *Matter of Searer*, 950 F Supp 811, 813 [WD Mich 1996] [wherein the District Court recognized that "(t)he nature of a disciplinary proceeding

is neither civil nor criminal," and that its purpose was "not to punish, but rather to determine whether misconduct implicates fitness to continue to function as an officer of the Court"]). She also rejected respondent's defenses, as the surrounding circumstances did not justify or excuse his conduct, which went beyond mere "zealous advocacy."

ALJ Thomas found that "the overall course of . . . respondent's conduct . . . demonstrate[ed] a pattern of contemptuous behavior constituting a significant departure from the conduct of a reasonable attorney abiding by acceptable norms of practice." She further found that certain incidents, such as the accusation that IJ Weil was doing the government's job, were egregious enough to support a finding of contempt (citing *In re Moncier*, 550 F Supp 2d 768 [ED Tenn 2008], *affd* 329 Fed Appx 636 [6th Cir 2009], *cert denied* 559 US 1106 [2010] [five-year suspension imposed on attorney found to be in contempt where he repeatedly interrupted the court, disobeyed the judge's order not to speak after interruption, and threatened to abandon client in the midst of a court proceeding]).

ALJ Thomas noted that, despite his apology to IJ Weil, a "number of . . . comments [made] about [IJ] Weil's testimony [at the disciplinary hearing] reflect the same ongoing undercurrent of disparagement or disrespect for the judicial office as is reflected in the MH tapes themselves." These comments included a claim that IJ Weil concealed information, attributing IJ Weil's pride of being "methodical" to being a product of his lack of preparedness, questioning the veracity of IJ Weil's claim that other lawyers do not complain, and challenging whether IJ Weil understood "what an asylum hearing is about."

ALJ Thomas rejected respondent's claim that any issues had been "worked out," noting that IJ Weil attributed the change in respondent's behavior at subsequent hearings to IJ Weil's taking pains to keep the hearings as calm as possible given respondent's conduct, and that the altered behavior could be attributable to respondent's realization, after asylum was granted to M.H., that other cases could have a similar result.

On December 22, 2010, ALJ Thomas took evidence in the final stage of the discipline hearing and, by memorandum of final decision and order dated March 10, 2011, imposed a seven-month suspension. The potential mitigating factors she considered included the fact that respondent's clients generally viewed him favorably, a client described him as one of the few attorneys who understood the conditions in Burma and knew

how to deal with traumatized Burmese nationals, and that the conduct was not motivated by personal gain.

The potentially aggravating factors included the fact that respondent had enough experience to be familiar with the minimal standards of civility, his disciplinary history, and his failure to take full responsibility for his actions, displaying similar conduct during the disciplinary proceedings. Respondent's prior discipline included a suspension from the New York State bar from June 7, 1999 through June 1, 2004, for failing to register with the Office of Court Administration and pay biennial dues (with ALJ Thomas crediting respondent's claim that he corrected the problem as soon as he learned of it) and the June 12, 2007 informal admonition for failing to appear before IJ Staton at two hearings scheduled in March 2007 (*see Matter of Attorneys in Violation of Judiciary Law § 468-a [Sondel]*, 8 AD3d 20 [1st Dept 2004]).

ALJ Thomas found that respondent "is neither prepared to acknowledge the wrongfulness of his conduct or to accept any genuine responsibility for it." She further found that this conduct continued during the disciplinary proceedings, at which respondent was unwilling to focus on the topic at hand, ignored explicit instructions and exhibited antagonistic and aggressive behavior. ALJ Thomas gave "minimal credence to the respondent's letter" of apology, finding that "it appear[ed] patently insincere in light of his continuing gratuitous personal attacks on Judge Weil and . . . insistence that he still has no idea why this case was even brought." In light of the foregoing, ALJ Thomas questioned respondent's ability to conduct himself professionally "when a matter does not proceed as he wishes."

In determining the sanction, ALJ Thomas recognized that a year-long suspension would have a devastating effect on respondent's practice, which was limited to immigration, but found that his "lack of appreciation for the gravity of the offense creates a danger of recurrence." ALJ Thomas felt that respondent's conduct was not likely to improve "without a period of suspension sufficient in length to convince [him] . . . that he will have to take steps to modify his approach." Accordingly, she imposed a seven-month suspension.

By order dated November 3, 2011, the BIA dismissed respondent's appeal, and adopted and affirmed ALJ Thomas' September 29, 2010 and March 10, 2011 orders, finding "no reason to disturb either the factual findings or any other conclusion or ruling reached by the Adjudicating Official in her thoughtful,

well-reasoned decisions." The BIA suspended respondent from practicing law before the immigration courts, BIA, and DHS for a period of seven months, effective November 18, 2011.

By order dated July 10, 2012, the BIA granted respondent's request and reinstated him to practice law before all three courts.

In seeking an order, pursuant to 22 NYCRR 603.3, suspending respondent from the practice of law for a seven-month period, the Committee asserts that respondent has no defenses herein. In this regard, 22 NYCRR 603.3 (c) provides that the only defenses that may be raised in a reciprocal disciplinary proceeding are:

> "(1) that the procedure in the foreign jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

> "(2) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this court could not, consistent with its duties, accept as final the finding in the foreign jurisdiction as to the attorney's misconduct; or

> "(3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this jurisdiction."

Respondent demands a hearing herein, raising the first and second of the above defenses. The Committee correctly asserts that respondent has no defense under 22 NYCRR 603.3 (c) (1) because he was provided with a notice of intent to discipline, which he answered, he fully participated in a three-stage disciplinary proceeding, and he availed himself of his right to appeal ALJ Thomas's determination. In light of the foregoing, respondent's claim that he was denied due process and the opportunity to be heard is unpersuasive.

Respondent's challenges to the validity of IJ Tsankov's notice of recusal on the grounds that it was not signed by her, was not written on her letterhead, and that the timing of her recusal is suspect are rejected. Respondent's suspicions concerning the recusal do not negate the due process afforded to him.

We also reject respondent's assertion that he was deprived of meaningful review of ALJ Thomas's decisions because the BIA merely issued a "boilerplate" affirmance. While the BIA's decision is terse, it identified ALJ Thomas's relevant findings and

the applicable standard of review, and set forth that, upon consideration of the arguments raised by both sides, it found no reason to disturb ALJ Thomas's "thoughtful, well-reasoned decisions." While respondent asserts that the admonition was invalid as the underlying conduct, failure to appear at pre-hearing conferences, did not violate 8 CFR 1003.102 (1) at the time, he did not raise this issue in the prior proceedings. In any event, whether or not the conduct at issue was sanctionable, it still serves as an aggravating factor.

While respondent challenges the sufficiency of the proof of his misconduct (*see* 22 NYCRR 603.3 [c] [2]), he does not deny that the factual allegations concerning his behavior have been established or that his conduct was improper. Instead, he claims that his conduct did not violate 8 CFR 1003.102 (g) by engaging in contumelious or obnoxious conduct. ALJ Thomas did not require or make separate findings of intent or obstruction of justice. Respondent's conduct, however, which included openly defying IJ Weil, demonstrates the requisite intent to obstruct justice.

Respondent maintains that ALJ Thomas ignored the substantial mitigating factors, especially IJ Weil's perceived misconduct, including his failure to familiarize himself with the situation in Burma and failure to warn respondent that his conduct was improper, within the cramped confines of the El Centro court, respondent's desire to advocate for his client and his otherwise unblemished history in representing hundreds of asylum seekers in immigration courts across the country. ALJ Thomas, however, considered these factors, in reaching her decision.

Respondent complains that IJ Weil never rebuked him during the hearing, giving no indication that he understood respondent's conduct to warrant discipline or constitute a threat, repeatedly stating "that's fine." However, the issue of whether IJ Weil understood the conduct to be threatening has already been factually determined against respondent by ALJ Thomas, who heard the audiotapes and IJ Weil's testimony. IJ Weil's failure to warn respondent that his behavior may lead to discipline is not a legal defense. Respondent's conduct was not confined to a single incident. One need not be warned to understand that the conduct found is unacceptable. While respondent's conduct was not as egregious as in the case relied upon by ALJ Thomas, *United States v Schiffer* (351 F2d 91 [6th Cir 1965], *cert denied* 384 US 1003 [1966] [contemptuous conduct included accusing the court of conducting a star-chamber proceeding and the

court's rulings as smacking of, inter alia, Stalinism and Hitlerism]), her finding that no warning was required in light of respondent's clearly contemptuous behavior is supported.

*Department of Educ. v Brust*, OATH (index No. 2280/07, Sept. 25, 2009), cited by respondent, does not support a contrary conclusion. There, the ALJ imposed an indefinite suspension and monetary sanction upon an attorney for a pattern of misconduct during a disciplinary hearing against his client, which conduct persisted over 14 days despite numerous warnings. The mere fact that the attorney was given multiple warnings does not establish that warnings are needed before misconduct is found. While respondent's conduct was not as egregious or drawn out as the attorney's conduct in *Brust*, the penalty imposed here, a seven-month suspension, is far less than the indefinite suspension imposed against that attorney.

Based upon the foregoing, it is submitted that respondent has no defense under 22 NYCRR 603.3 (c) (2). Respondent also has no defense under section 603.3 (c) (3), since his violation of 8 CFR 1003.102 is analogous to Code of Professional Responsibility DR 7-106 (c) (6) (22 NYCRR 1200.37 [c] [6] [a lawyer shall not engage in undignified or discourteous conduct which is degrading to a tribunal]).

"As a general rule in reciprocal disciplinary matters, this Court accepts that the jurisdiction where respondent lived and practiced law at the time of the offense has the greatest interest in the issue and the public policy considerations relevant to such disciplinary actions" (*Matter of Dimick*, 105 AD3d 30, 32 [1st Dept 2013] [internal quotation marks omitted]; *see Matter of Power*, 3 AD3d 21, 24 [1st Dept 2003]).

In New York, the sanction imposed by this Court on an attorney for contemptuous behavior varies widely depending upon the nature and extent of the conduct and the existence of mitigating and/or aggravating factors (*see Matter of Kahn*, 16 AD3d 7 [1st Dept 2005] [six-month suspension for pattern of abusive behavior, including making sexually offensive and demeaning comments to female adversaries where the respondent began therapy to address problem]; *Matter of Hayes*, 7 AD3d 108 [1st Dept 2004] [public censure for disrespectful behavior before court, including accusations of racism and prejudice, where attorney had two prior admonitions but mitigation included attorney's advanced age and a suspension would have effectively ended career]; *Matter of Wisehart*, 281 AD2d 23 [1st Dept 2001], *lv dismissed in part, denied in part* 96 NY2d 935

[2001] [two-year suspension for, inter alia, making false accusations of incompetence and bias against two judges and wrongfully using adversary's work product]; *Matter of Golub*, 190 AD2d 110 [1st Dept 1993] [public censure for unprofessional and degrading statements about a judge to the press where, inter alia, the judge was satisfied with the attorney's apology]; *see also Matter of Dinhofer*, 257 AD2d 326 [1st Dept 1999] [reciprocal discipline of three-month suspension on attorney who was disrespectful and insulting to a judge during a telephone conference, including calling the judge corrupt, despite lack of prior discipline]).

The Court also notes that respondent failed to inform it about the federal discipline imposed, in violation of 22 NYCRR 603.3 (d). In this regard, respondent explains that he was unaware of the need to do so and the failure did not benefit him as his practice is limited to immigration law.

The discipline imposed by the EOIR does deviate from this Court's precedent in similar cases (*see e.g. Matter of Kahn*, 16 AD3d 7 [1st Dept 2005]; *Matter of Dinhofer*, 257 AD2d 326 [1st Dept 1999]). Once a New York suspension exceeds six months, a more rigorous reinstatement procedure is required (*see* 22 NYCRR 603.14 [a]; *Matter of Burden*, 5 AD3d 1, 4 [1st Dept 2004]). In most cases New York's discipline for similar conduct, in like circumstance, therefore, does not exceed six months. A six-month suspension is consistent with ALJ Thomas' intention to properly prevent such conduct from recurring, while not completely devastating respondent's ability to practice law in the future.

Accordingly, the Committee's petition for an order imposing discipline is granted to the extent that respondent is suspended from the practice of law for a period of six months. The New York discipline is imposed nunc pro tunc to November 18, 2011, the effective date of his foreign discipline.

MAZZARELLI, J.P., RENWICK, RICHTER, GISCHE and CLARK, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of six months, nunc pro tunc to November 18, 2011 and until further order of this Court.